[No. C.D. 7888. En Banc. February 3, 1983.]

*In the Matter of the Disciplinary Proceeding
Against* WILLIAM L. DENEND, *an
Attorney at Law.*

*William L. Denend,* pro se.

*Robert T. Farrell* and *Robert D. Welden,* for Bar Association.

DIMMICK, J.—We are here concerned with an attorney discipline proceeding involving misuse of client trust funds among other violations of the Code of Professional Responsibility. For such abuses, we agree with the unanimous recommendation of disbarment of the Washington State Bar Association's Disciplinary Board.

William L. Denend received his law degree in 1949 and served in the United States Army until he retired as a colonel. He was admitted to practice law in the state of Washington in 1973 and thereafter set up practice in Kitsap County.

The following facts as found by the hearing officer gave rise to these disciplinary proceedings:

Whipple matter. In 1977 respondent became attorney and executor of the estate of Ralland Whipple. The estate amounted to approximately $150,000 largely consisting of life insurance proceeds. One week after Mr. Whipple's death respondent paid himself $3,000 from the estate funds as fees for handling the probate. This fee, substantially unearned at the time, was placed in respondent's general office account rather than the trust account. Mrs. Whipple had not agreed to, nor was she advised of, payment of this fee. Ten days later respondent paid himself $12,000 from the estate's funds as a legal fee to establish and administer an inter vivos trust. At that time, respondent had no agreement with Mrs. Whipple regarding the amount of the fees or the nature of his services. Mrs. Whipple did understand, however, that respondent would act as trustee and be compensated for his services. At the disciplinary proceedings respondent attempted to justify the charges of $3,000 and $12,000 as being nonrefundable retainers and were thus properly put into his office account rather than the client's trust account, citing *In re Zderic,* 92 Wn.2d 777, 600 P.2d 1297 (1979). In *Zderic* the attorney and client agreed that the client would pay a retainer fee prior to any services

being rendered. The attorney put these unearned fees into his office account and not a trust account. We noted the Board's apparent confusion about the status of such retainer fees and concluded that due to such confusion we would not consider the issue in disciplinary proceedings. *Zderic,* however, is inapplicable in the instant case since the hearing panel officer specifically found that no agreement existed between respondent and Mrs. Whipple regarding these fees, either as to the amount or the fact that they were retainer fees. Additionally, respondent had given several different explanations at various times as to the nature of the unearned aspect of those fees. The assertion that the fees were nonrefundable was first made at the disciplinary proceeding and had not been made in the suit (discussed hereafter) brought earlier by Mrs. Whipple against respondent. Respondent's testimony at the disciplinary proceeding regarding this theory is unsupported and appears to be pure afterthought.

Respondent handled several real estate transactions for the estate for which he charged both legal fees and escrow fees and in one instance charged the estate a $1,000 escrow fee twice. Additionally, respondent in settling a lawsuit against the estate received $4,000 as attorney fees when he was only entitled to $2,000. As trustee respondent made several improvident investments of estate assets.

Mrs. Whipple terminated respondent as attorney for the estate and trust after determining that respondent had charged an excessive fee, had mismanaged the estate's assets and failed to properly account for estate funds. Mrs. Whipple then filed suit and after two trials the superior court judge orally gave his decision finding that respondent had charged clearly excessive fees, made incompetent decisions regarding estate assets and had violated his fiduciary obligations. The court concluded that respondent must forfeit all legal fees and repay Mrs. Whipple an amount equal to the damage caused by the improvident investments he made as trustee. After this ruling but before judgment was entered, respondent settled with Mrs. Whipple by payment

to her of $37,500.

Allred matter. Respondent received $1,200 from an insurance company on an accident claim on behalf of Tracy Allred, Mrs. Whipple's son. Respondent placed the money in a trust account and disbursed fees and costs. A balance of $723.01 belonging to Mr. Allred remained in the trust account 4 years later. Respondent testified he sent two letters to Mr. Allred advising him of the funds. In the last of these letters respondent testified he told Mr. Allred that if the funds were not claimed respondent would use them. No copies of these letters were presented, nor were the letters returned as undeliverable. Respondent placed the funds in his office account but because the trust account was out of balance he was only able to transfer $105.11. Mr. Allred never consented to the use of his funds. According to respondent the funds transferred from the Allred account were used to pay the settlement with Mrs. Whipple. Respondent felt such payment was in effect payment to Mr. Allred and found nothing wrong with this transaction, although at oral argument he indicated he would still pay Mr. Allred if requested to do so.

MacIntyre matter. Respondent was hired by the MacIntyres to handle several real estate transactions. It was agreed that respondent would receive from or on behalf of the MacIntyres the funds collected on various real estate contracts and would in turn pay the expenses on those contracts. Respondent did not deposit any of these funds in a trust account but deposited them in his general office account. Respondent never rendered any accounting to the MacIntyres nor any regular billings. Mr. MacIntyre was advised by a survey company that a bill remained unpaid which was to have been paid by respondent. Mr. MacIntyre requested from respondent's office assistant a copy of his ledger which indicated the bill had been paid from his funds. Mr. MacIntyre then paid the surveyor's bill and hired another attorney who requested an accounting. The accounting was not provided until over a month later. The hearing officer found unpersuasive and unacceptable

respondent's explanation that the delay in getting the accounting to Mr. MacIntyre was due to his bookkeeper (his son) taking examinations at the University of Puget Sound. The undated and inadequate accounting did not reflect any payment to the surveyor. Respondent blamed the incorrect entry showing the payment of the bill on a bookkeeping error and testified he would have caught the error had Mr. MacIntyre not demanded to see the ledger. Respondent's records indicate he paid the surveyor's bill approximately a year and 3 months after the accounting. As of the date of the disciplinary proceedings respondent had not told Mr. MacIntyre whether the surveyor's bill had in fact been paid twice. Prior to the accounting but after Mr. MacIntyre had contacted another attorney, respondent paid himself $1,000 from MacIntyres' funds in his possession. This fee was taken without any agreement with, or accounting or billing to, the client.

Audits. The bar association's director of audits and accounts prepared an audit of respondent's trust account. The audit is dated May 16, 1981, and covered the period of November 1, 1973, to April 30, 1981. The report indicates that respondent had consistently commingled personal funds with client trust funds, and client funds with funds in his general office account. The report also shows that respondent consistently failed to maintain complete records of client funds in his trust account, resulting in negative client trust balances.

The hearing officer concluded from the foregoing facts that respondent had violated the following disciplinary rules:

1. CPR DR 2–106 (a lawyer shall not charge or collect an illegal or clearly excessive fee) in paying himself $3,000 and $12,000 in the Whipple matter as those fees were clearly excessive, were unearned, and were taken without agreement with the client.

2. CPR DR 6–101 (failing to act competently) concerning several improvident transactions while acting as trustee on behalf of the Whipple estate.

3. CPR DR 9-102(A) and (B) (preserving identity of clients' funds, accounting for and delivering same) by the following conduct: (a) placing the $3,000 and $12,000 in fees for the Whipple estate and trust in his general office account without prior knowledge and consent of the client and by failing to account for those fees; (b) commingling his funds with his clients' funds in handling the MacIntyres' transactions; (c) failing to render proper accountings or billings to the MacIntyres during the time they were his clients together with the inadequate and delayed accounting provided to MacIntyres' subsequent attorney; (d) consistently commingling funds as shown by the audit; and (e) consistently failing to maintain complete records of client funds in his trust account.

4. CPR DR 1-102(A)(4) (incorrectly cited as 1-101(A)(4) in the hearing officer's conclusions of law) and DRA 1.1(a) (committing an act involving moral turpitude and dishonesty) by transferring funds belonging to Tracy Allred to his general office account without his client's consent.

The hearing officer determined that respondent's misconduct was serious and the Allred matter was a clear example of misappropriation of client funds. The hearing officer appropriately considered several mitigating factors as well as aggravating factors in concluding that respondent is not fit to practice law and should be disbarred.

■ Respondent first objects to most of the factual findings. Such objections are without merit. There was substantial, albeit disputed, testimony supporting the findings. We recently reaffirmed that

"Although a panel's findings of fact do not have the force of formal findings made by a trial judge, they are made by persons chosen to make them according to rules established by this court in carrying out its disciplinary activities." While we review and evaluate the entire record, because of our ultimate discipline responsibility, we ordinarily will not disturb the findings of fact made upon conflicting evidence.

*In re Miller*, 95 Wn.2d 453, 457, 625 P.2d 701 (1981).

Respondent's challenges to the conclusions of law must also fail as they are all fully supported by the findings of fact.

Respondent asserts that disbarment is not appropriate and a less severe sanction should be imposed. He concedes that some money was erroneously placed in a business account rather than a trust account. He also admits that the violations taken together may be considered as serious. However, respondent attempts to excuse and justify his misconduct and he asserts the violations viewed separately are not serious enough to require disbarment. Respondent suggests that continuing accounting procedures and audit supervision by the bar association would be the appropriate remedy for the future protection of the public. We cannot agree with respondent's assertions or suggestions.

■ In making the ultimate determination as to the measure of disciplinary action, we consider:

> (a) the seriousness and circumstances of the offense, (b) avoidance of repetition, (c) deterrent effect upon others, (d) maintenance of respect for the honor and dignity of the legal profession, and (e) assurance that those who seek legal services will be insulated from unprofessional conduct.

*In re Smith*, 83 Wn.2d 659, 663, 521 P.2d 212 (1974).

The gravamen of respondent's misconduct relates to a breach of his obligations to clients in handling, maintaining and accounting for trust funds although additional misconduct clearly occurred as well. Unfortunately, we have had a number of opportunities to express our attitude with regard to the proper discipline of attorneys who mishandle clients' funds and fail to properly maintain trust accounts.

■■ Our basic position was expressed in *In re Deschane*, 84 Wn.2d 514, 516–17, 527 P.2d 683 (1974). We held:

> a lawyer, as a fiduciary, owes the highest duty to his clients as a matter of law. Lawyers routinely process funds through their trust accounts, aggregating very substantial amounts. Without hesitation, clients and other parties to transactions entrust these funds to lawyers, often without documentation. Confidence in the bar demands that law-

yers preserve the integrity of entrusted funds and that lawyers promptly, accurately and fully account for such funds. Virtually all lawyers fulfill these responsibilities. But when these duties are violated it is the court's solemn responsibility to mete out discipline appropriate to the seriousness of the offense.

. . .

Those few lawyers who mishandle trust funds, who fail to maintain complete records of trust funds and who fail to account and deliver funds as requested are reminded that disbarment is the usual result.

We have subsequently applied this reasoning. For example, in *In re Rosellini,* 97 Wn.2d 373, 377, 646 P.2d 122 (1982), we imposed disbarment for trust account violations and cited 46 cases wherein similar violations led to disbarment.

Disbarment, however, is not necessarily the inevitable result of trust account violations. We have imposed other less severe sanctions for trust account violations if extraordinary mitigating circumstances exist. *In re Salvesen,* 94 Wn.2d 73, 614 P.2d 1264 (1980); *In re Kumbera,* 91 Wn.2d 401, 588 P.2d 1167 (1979).

The only mitigating factors respondent suggests are lack of prior discipline (he had only practiced approximately 4 years before the first of these complaints arose), his service in the army, his cooperation with the bar association (required by DRA 2.6), and testimony presented by two people at the hearing that respondent had a good reputation in the community. These mitigating factors are not sufficient to prevent disbarment, especially in light of the aggravating factors including respondent's violation of other disciplinary rules. Mrs. Whipple was forced to institute suit against respondent and conduct two trials before respondent finally paid her $37,500 and that, only after the trial judge indicated the amounts he would consider in giving the final judgment. Further, respondent's basic attitude is that he did nothing wrong. He does concede he had difficulty in managing his trust account but does not consider the transgressions to be serious. He continues to assert that

his handling of the Allred matter was entirely proper and he points to the fact that Mr. Allred has filed no complaint. This fact does not make the violation any less serious. Violations of professional standards may be brought to the bar association's attention by "complaint or otherwise." DRA 2.1(c)(1). Respondent has a fundamental miscomprehension of his fiduciary obligations to his clients and in handling their funds. Thus, there can be no assurance that the conduct will not be repeated.

The recommended disbarment is appropriate in light of the serious nature of his misconduct, the various mitigating and aggravating factors, and the considerations enunciated in *In re Smith, supra*. Costs of $2,441.57 are awarded.

William L. Denend is hereby disbarred and his name shall be stricken from the roll of attorneys in this state.

WILLIAMS, C.J., STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, DORE, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.