Gary R. EITEL, Plaintiff,

v.

William D. McCOOL, Defendant.

No. C–84–354.

United States District Court,
E.D. Washington.

Sept. 10, 1984.

Gary R. Eitel, pro se.

Thomas Scribner of Minnick, Hayner & Zagelow, P.S., Walla Walla, Wash., for defendant.

## ORDER

ROBERT J. McNICHOLS, Chief Judge.

Plaintiff and defendant enjoyed an attorney/client relationship over the course of some years which commenced while each resided in Alaska. Due to a number of factors not here relevant, that relationship began to deteriorate and finally broke down completely in late 1983. Mr. Eitel eventually commenced the instant action. The ink on the complaint was hardly dry when a purported settlement agreement was reached. It is the existence and terms of that agreement which supply the basis for defendant's pending motion for an order compelling execution of a general release. Pertinent chronology is as follows:

January 17, 1984—Mr. Eitel filed a complaint with the Washington State Bar Association alleging certain acts of misfeasance and malfeasance on Mr. McCool's part.

April 26, 1984—Attorney Scribner, acting on behalf of McCool, offered to settle this impending (but not yet filed) action for: (1) $40,000; (2) stipulated dismissal with prejudice; and (3) execution of a general release. By return letter, plaintiff rejected the offer.

May 10, 1984—Scribner renewed the offer, noting that it would terminate as of May 25, 1984.

May 17, 1984—The instant action was commenced.

June 18, 1984—Attorney Boundy, acting on behalf of defendant's insurance carrier, contacted Mr. Eitel by telephone. According to Boundy's affidavit in support of the instant motion, the terms of his offer were identical to that posed by Scribner. According to Eitel, the agreement contemplated payment of $40,000 and a stipulated dismissal, but not a general release.

June 20, 1984—A draft for $40,000 was received by George White, an attorney in Texas who had been advising Eitel but who had never appeared of record.[1] White turned over the draft and accompanying stipulation forms to Eitel. Eitel then prepared his own form of dismissal and mailed it to Scribner, commenting that he considered the entire matter to now be concluded. Scribner replied that it would not be "concluded" until such time as Eitel signed the general release.

July 11, 1984—After a series of communications, Eitel came to the conclusion that if Scribner was not going to file the dismissal (which in fact was never filed), then it must have been defendant's intention to proceed with this action notwithstanding the payment of $40,000. Accordingly, Eitel filed a notice of default based on defendant's failure to answer.

The instant motion then was brought, and oral argument was heard telephonically on August 31, 1984. Having in mind the full record, including all exhibits and affidavits contained therein, as well as representations made during the course of argument, the Court disposes of the issues raised as follows.

*The $40,000 Payment:*

Eitel now contends that his actual out-of-pocket loss attributable to McCool's alleged malpractice is some $400,000, and that he was induced to accept the comparatively nominal sum offered only by reason of economic duress. He asks that his improvident acceptance of the $40,000 be considered a product of such duress, and that the settlement be "rescinded." There are several problems with this approach. First, in view of Eitel's letters to Scribner and to the Bar Association immediately af-

---

**1.** Whatever may be the relevance of DR 3–101(A) and EC 3–7, the facts of this case powerfully underscore the general proposition that any legal action worth a lawyer's advice is probably worth his retainage as well.

ter receipt of the funds, there can be no doubt whatever that plaintiff was prepared to accept the sum offered, and did in fact accept it. External economic pressure cannot serve as a predicate for disregarding what was clearly a meeting of the minds at the formation stage of the agreement. Further, even if the Court were inclined to accept a "rescission" argument, the plain fact of the matter is that Eitel no longer has the $40,000, having spent it on family necessities.

*Stipulation of Dismissal:*

Nor can there be any room for doubt as to the parties' mutual intent to dismiss this action with prejudice. Eitel himself drafted and signed such a stipulation, and Scribner agreed in argument that it was substantially identical to the form proposed by the defendant.

*General Release:*

Where there is a good deal of uncertainty, is the issue of whether the subject of a general release came under discussion at the time of the Boundy/Eitel settlement conference, and if so, whether Eitel agreed to its terms and conditions. Given the directly conflicting renditions of the respective individuals involved, and the self-serving nature of such representations, there is no way the Court can make the requisite credibility judgments either on the basis of the present record or over the telephone. If this aspect of the instant controversy were to be determined on the merits, it would necessarily be at the conclusion of an evidentiary hearing: a prospect neither of the parties seemed to be overly enthralled with due to the expense and time involved.

There are two thrusts behind the general release sought. The first is to guard against the possibility that Eitel may continue to pursue additional damage claims against McCool. Given the broad-based allegations in the complaint, and the expansive timeframe involved, it would appear that the claims raised in the instant case are virtually co-extensive with the Eitel/McCool relationship, and it is probably a rare court which would fail to give issue

preclusive effect to entry of dismissal with prejudice of the action at hand. To ensure that this was in fact the situation, the Court pointedly asked Eitel whether he intended to bring any further damage actions against McCool. He replied that he did not. In like fashion, the Court inquired of Scribner whether McCool considered the instant action dispositive as to any and all counterclaims he may have against Eitel. Scribner (with McCool listening in on an extension), represented that this was true. So viewed, it is apparent that this order will serve both parties as the functional equivalent of a mutual general release as to any further litigation which could have been advanced in the instant action.

The second thrust underlying defendant's desire for execution of a general release concerns Eitel's announced intention to proceed with his complaint to the Bar, and to lodge an additional complaint as well based on events occurring since this action was commenced. The intent of the parties in regard to this aspect of the instant motion is irrelevant. Even in the face of uncontroverted evidence that an agreement had been reached prohibiting the filing or maintenance of a bar complaint, the Court would not enforce a provision so clearly contrary to public policy.

Unlike an action in damages which involves a controversy between individuals, the focus of a bar investigation lies in safeguarding the public interest. *See, e.g., In re McGlothlen,* 99 Wash.2d 515, 522, 663 P.2d 1330 (1983). Whether or not a complainant has, or even could state, a cause of action is totally immaterial to the conduct of a disciplinary proceeding. *In re Miller,* 99 Wash.2d 695, 700–01, 663 P.2d 1342 (1983). Indeed, even the failure of an injured party to lodge a bar complaint will not be considered a factor of any weight in ascertaining whether an ethical breach has occurred. *In re Denend,* 98 Wash.2d 699, 707, 657 P.2d 1379 (1983). There are few who would dispute that the legal profession's ability and willingness to put its own house in order has had a checkered past. *See generally,* The True Story of Lawyer

Discipline, 70 *A.B.A. Journ.* 3 at 92 (Sept. 1984). The courts should not be expected to put the judicial stamp of approval upon any private agreement which would tend to impair the impressive gains made in this area in recent years. Accordingly, since the term at issue would not be enforced in any event, it is unnecessary to reach the question of whether such term was agreed to.[2]

THEREFORE IT IS ORDERED that:

(1) Defendant's Motion to Compel Execution of Release is DENIED except insofar as it relates to dismissal of this action.

(2) Pursuant to the parties' agreement this action is DISMISSED WITH PREJUDICE.

(3) The Clerk shall enter judgment accordingly.

(4) If an appeal is contemplated, a notice of appeal must be filed with the Clerk of this Court within thirty (30) days from entry of judgment.

---

**2.** In order to foreclose the possibility that language in the accompanying text may be put to a use not intended by the Court, it should be made abundantly clear that the merits of this action have in no sense been reached. Thus, I express no opinion whatever as to the truth of plaintiff's allegations.