[No. 4992. En Banc. July 7, 1988.]

*In the Matter of the Disciplinary Proceeding
Against* WILLIAM H. SIMMONS, *an
Attorney at Law.*

*Leland G. Ripley,* for Bar Association.

*Wm. H. Simmons,* pro se.

GOODLOE, J.—Respondent attorney William Simmons appeals the Disciplinary Board's unanimous order recommending that he be disbarred for giving an adverse witness 2 half–gallon bottles of whiskey the day before the witness

testified at trial. We concur with the board's recommendation and accordingly enter a judgment of disbarment.

In December 1984, Charles Seib initiated an adverse possession action against Simmons and others. Seib v. Thomas, Snohomish County Superior Court cause 84–2–04039–2. The action was in regard to a triangular–shaped segment of real property Simmons owned in Monroe, Snohomish County, Washington. On May 13, 1986, 1 day before the trial began, Simmons gave 2 half–gallon bottles of whiskey to William Boyden, an independent witness for Seib. Boyden testified at trial that the gift of the whiskey was "something like a bribe." Report of Proceedings, at 17.

In December 1986, the bar association filed a complaint against Simmons alleging that he delivered the liquor to impede justice. On March 31, 1987, a hearing was held before a Disciplinary Board officer regarding Simmons' alleged misconduct. On April 9, 1987, the hearing officer filed his findings of fact and conclusions of law. He also sent letters to Simmons and the bar association scheduling an additional hearing to consider the appropriate disciplinary sanction and inviting either party to propose changes in the findings and conclusions or move for reconsideration. Bar counsel moved for revision of the findings and conclusions. *Simmons did not.* Moreover, at the April 24, 1987, disposition hearing, *Simmons indicated that he had no motion with regard to the findings and conclusions.*

On April 28, 1987, the hearing officer filed his revised findings of fact, conclusions of law and recommendation. He found that Simmons was aware of Boyden's drinking problem and further found that Simmons

> knew that Boyden was a likely candidate to drink the whiskey and therefore be unavailable to testify at the trial or, if he did not drink the whiskey, then at least be more likely to testify favorably toward [Simmons].

Disciplinary Board Revised Findings of Fact, Conclusions of Law and Recommendations, at 26. The hearing officer concluded that Simmons violated:

A. RLD 1.1(a), prohibiting any act involving moral turpitude, dishonesty or corruption;

B. RLD 1.1(c), prohibiting a violation of his oath as a lawyer to abide by the laws, to maintain the respect due to courts, and not to seek to mislead the judge by any artifice [*sic*];

C. RLD 1.1(i), prohibiting a violation of the rules of professional conduct:

1. RPC 3.4(a), prohibiting obstruction of another party's access to evidence;

2. RPC 3.4(b), prohibiting offering a witness an inducement that is prohibited by law;

3. RPC 8.4(c), prohibiting conduct involving dishonesty, fraud or deceit.

D. RPC 8.4(b), prohibiting a criminal act that adversely reflects on his fitness as a lawyer (RCW 9A.72-.090, prohibiting bribing a witness, and .120, prohibiting tampering with a witness)[.]

Disciplinary Board Revised Findings, at 29. The hearing officer recommended that Simmons be suspended for 1 year and be reinstated only after taking and passing the professional conduct portion of the Washington State Bar Examination.

The bar association opposed the hearing officer's recommendation. On July 16, 1987, the board received Simmons' letter asking for a continuance of his July 17, 1987, hearing before the full board. On July 17, the board unanimously denied Simmons' request and adopted the hearing officer's findings of fact and conclusions of law. However, it decided that the hearing officer's recommendation was too lenient and unanimously recommended that Simmons be disbarred because of the seriousness of his misconduct, his lack of appreciation of his misconduct, and his past disciplinary history. See *In re Simmons*, 65 Wn.2d 88, 395 P.2d 1013 (1964), *cert. denied*, 381 U.S. 934 (1965).

Simmons now appeals the board's order recommending disbarment.

I

We first address Simmons' challenge to the hearing officer's finding that Simmons knew Boyden had a drinking

problem. Simmons contends that there is not substantial evidence to support such a finding.

In reviewing the findings of fact from a disciplinary hearing this court has stated that "[w]hile we review and evaluate the entire record, . . . we ordinarily will not disturb the findings of fact made upon conflicting evidence." *In re Denend,* 98 Wn.2d 699, 704, 657 P.2d 1379 (1983) (quoting *In re Miller,* 95 Wn.2d 453, 457, 625 P.2d 701 (1981)). The fact finder can best determine the credibility and veracity of witnesses. *In re Kuvara,* 97 Wn.2d 743, 747, 649 P.2d 834 (1982); *see In re Allotta,* 109 Wn.2d 787, 748 P.2d 628 (1988). This court should not supplant its evaluation of witness credibility for that of the hearing officer. *Allotta,* at 794; *In re Witt,* 96 Wn.2d 56, 68, 633 P.2d 880 (1981).

In the present case, the hearing officer evaluated the testimony of Paul Hansen, the trial court judge in the Seib v. Thomas adverse possession suit. Hansen testified that he: (1) found evidence of Simmons' knowledge of Boyden's alcoholism during Susan Simmons' testimony; (2) determined during Boyden's testimony that he was an alcoholic; and (3) concluded from Boyden's testimony that Simmons provided Boyden with the whiskey in anticipation that he would not be able to testify at trial. The hearing officer also evaluated Seib's testimony that Boyden "was a pretty healthy drinker . . . [a]nd in the later years, why, it showed on his appearance." Report of Proceedings, at 13. The hearing officer evaluated Julius Hodges' testimony that Boyden had a "chronic alcohol problem. He would drink wine by the quarts, sometimes by the gallons, whiskey by the fifth." Report of Proceedings, at 26. The hearing officer read and evaluated exhibit 7; it included the transcript of Susan Simmons' testimony in the adverse possession case that Boyden's wife Joanne "showed us bruises all over her body", (exhibit 7, at 34), so Susan Simmons gave whiskey to the Boydens because he would be less inclined to hurt his wife as he would get more docile or go to sleep. Finally, the hearing officer heard Simmons' testimony contending

that he did not know Boyden had a drinking problem. We see no reason to doubt the hearing officer's judgment concerning the witnesses' credibility and veracity.

Moreover, Simmons had the opportunity to challenge the hearing officer's findings and conclusions prior to and at the April 24, 1987, disposition hearing. First, the hearing officer's April 9, 1987, letter to Simmons stated that if he had any proposed changes in the findings and conclusions he could make a written motion which would be addressed at the disposition hearing. *Simmons declined to propose any changes.* Second, the hearing officer asked Simmons at the disposition hearing if he had any motion with regard to the findings and conclusions. *Again, Simmons declined to propose any changes.*

The record in this case provides ample support for the hearing officer's conclusions that Simmons bribed and tampered with a witness in violation of RPC 8.4(b), RCW 9A.72.090 and .120. The record also supports the hearing officer's conclusions of the other disciplinary rules that Simmons violated.

## II

We next address Simmons' contention that he was deprived of his right to a fair hearing because the board denied his motion for a continuance.

On July 16, 1987, 1 day prior to Simmons' hearing before the full board, it received Simmons' request for oral argument and submission of a written response to bar counsel's memorandum in favor of disbarment. Bar counsel opposed Simmons' request as untimely because it was submitted after the filing deadline under RLD 6.2(c). The board unanimously denied Simmons' request.

Simmons received a copy of bar counsel's memorandum on June 18, 1987, by certified mail. RLD 6.2(c)(3) states that

> The respondent lawyer may file a response to a statement of state bar counsel within 10 days of service of that statement upon the respondent lawyer.

Simmons did not meet this deadline with his request to submit a written response. RLD 6.7(c) states in part that

> Oral argument before the Board shall be permitted upon the request of either the respondent lawyer or state bar counsel. Such request shall be filed with the Association no later than the date on which the party requesting oral argument is permitted to file his or her final statement, counterstatement or response under rule 6.2 or 6.3.

Simmons also did not meet this deadline with his request for oral argument.

A continuance of the hearing date "may be granted in the discretion of the hearing officer or panel chairperson for good cause shown." RLD 4.10(e). As an attorney, Simmons knows the importance of timely meeting a filing deadline; however, he failed to meet the filing deadline with his request for a continuance. We hold that the board did not abuse its discretion in denying Simmons' motion.

### III

We next address Simmons' contention that Leland Ripley, bar counsel for the Washington State Bar Association, was prejudiced against Simmons and prejudged him.

Simmons contends Ripley's prejudice is evidenced by Ripley's memorandum in favor of disbarment. However, Ripley's role as bar counsel is to act on the bar association's behalf. *See* RLD 2.6(b)(5). Ripley properly acted as an advocate in this disciplinary action.

Simmons further argues that evidence of Ripley's prejudice was his motion to strike Simmons' appeal as not timely under RLD 7.2(b). Ripley admits that he was in error but correctly points out that Simmons was not prejudiced since Ripley withdrew his motion.

Finally, Simmons asserts that Ripley's prejudice is evidenced by Ripley's consultation with the hearing officer after the April 24, 1987, disposition hearing. Ripley admits that he talked to the hearing officer after the disposition hearing but says the topic of conversation was not related

to the present disciplinary action. Simmons has submitted no evidence other than that the conversation occurred.

We find no merit in Simmons' contention that Ripley was prejudiced against Simmons. Our review of the record indicates that Ripley acted appropriately throughout the disciplinary action against Simmons.

## IV

Finally, we address whether disbarment is the appropriate sanction in this matter.

First, however, we note that the board is the only body that considers the full spectrum of disciplinary cases while this court generally only hears the more serious cases. While we have the ultimate responsibility of determining the appropriate sanction, "it is appropriate that we be guided by the recommendations of the Disciplinary Board." *In re Noble,* 100 Wn.2d 88, 95, 667 P.2d 608 (1983). In the present case, the board unanimously recommended that Simmons be disbarred.

In determining the appropriate sanction, we turn to the analytical framework provided by the *ABA Standards for Imposing Lawyer Sanctions* (Approved Draft, 1986). *See In re Yates,* 110 Wn.2d 444, 451, 755 P.2d 770 (1988); *Allotta,* at 795; *In re Witteman,* 108 Wn.2d 281, 288, 737 P.2d 1268 (1987); *In re Rentel,* 107 Wn.2d 276, 282, 729 P.2d 615 (1986). This framework raises four questions:

1. What ethical duty did the lawyer violate?
2. What was the lawyer's mental state?
3. What was the extent of the actual or potential injury caused by the lawyer's misconduct?
4. Are there any aggravating or mitigating circumstances?

*Allotta,* at 795; *Rentel,* at 283.

In this case, we reach the following conclusions in answering the four questions. Simmons violated ethical duties to the legal system, the general public and his client by bribing and tampering with a witness. Bribing or tampering with a witness involves moral turpitude because

attempts to influence a witness to change his testimony or to absent himself from a trial . . . have as their purpose and it is their natural tendency to obstruct justice. They are offenses against the very object and purpose for which courts are established.

*In re Stroh,* 97 Wn.2d 289, 296, 644 P.2d 1161, *cert. denied,* 459 U.S. 1202 (1982) (quoting *State v. Stroh,* 91 Wn.2d 580, 582, 588 P.2d 1182, 8 A.L.R.4th 760 (1979)). We agree with the board regarding the seriousness of Simmons' misconduct.

Simmons' action was with the intent of rendering Boyden unable to testify or, at least, influence him to testify more favorably. The *ABA Standards,* at page 6, addresses intent as follows:

The most culpable mental state is that of intent, when the lawyer acts with the conscious objective or purpose to accomplish a particular result.

Simmons' misconduct had the potential to cause harm to Seib because it had the potential to significantly interfere with the outcome of the adverse possession trial.

While there is little evidence of mitigating factors, there is the aggravating factor of Simmons' prior disbarment. *See ABA Standards,* Std. 9.22(a), at 20.

Disbarment is generally appropriate when the attorney

intentionally tampers with a witness and causes serious or potentially serious injury to a party, or causes significant or potentially significant interference with the outcome of the legal proceeding.

*ABA Standards,* Std. 6.31(a), at 13. The board concluded that Simmons' misconduct warranted the most severe disciplinary sanction of disbarment. The evidence supports this sanction.

■ Finally, while we recognize every discipline case is unique, we observe that the board's conclusion of disbarment finds support in our case law. In *In re Stroh,* we held that tampering with a witness in violation of RCW 9A.72-.120 warranted disbarment. *In re Stroh,* at 301.

We order William H. Simmons be disbarred from the practice of law and that his name be stricken from the roll of attorneys in this state.

PEARSON, C.J., UTTER, BRACHTENBACH, DOLLIVER, DORE, and DURHAM, JJ., and CUNNINGHAM, J. Pro Tem., concur.

ANDERSEN, J., concurs in the result.