[No. 6771. En Banc. June 28, 1990.]

*In the Matter of the Disciplinary Proceeding
Against* JOSEPH E. MCGOUGH, *an
Attorney at Law.*

*Randy Beitel,* for Bar Association.

*Michael E. de Grasse,* for respondent lawyer.

DURHAM, J.—Attorney Joseph E. McGough appeals the recommendation of the Disciplinary Board of the Washington State Bar Association that he be suspended from the practice of law for 2 years. Upon careful review of the record and prior discipline cases, we conclude that the appropriate sanction is disbarment.

McGough was admitted to practice law in 1976 and has practiced in the Tri–Cities area since 1978, mostly as a sole practitioner. McGough has a prior disciplinary history resulting from conduct in 1984 and 1985, which culminated in his stipulation to two letters of censure in November 1985.[1]

The current proceeding was initiated by a complaint filed with Bar Association counsel by Rodger Easley on January 12, 1987. Easley alleged that McGough had failed to file a criminal appeal on his behalf in September 1985. The investigation of this matter was delayed due to McGough's failure to cooperate with the Bar Association's investigation. The Easley complaint was ordered to hearing on July 20, 1987, and Bar Association counsel filed a formal complaint on January 13, 1988.

On September 9, 1987, Isidro Diaz filed a complaint with Bar Association counsel alleging that McGough failed to file a criminal appeal on his behalf in April 1985. The investigation of this matter was also delayed due to McGough's

---

[1]In the letters of censure, dated March 20, 1986, McGough is censured for neglect of a legal matter, intentional failure to carry out a contract of employment, failure to render appropriate accountings, and failure to cooperate with a Bar Association investigation.

failure to cooperate with the Bar Association's investigation. The Diaz complaint was ordered to hearing on March 10, 1988, and Bar Association counsel filed the first amended formal complaint, alleging these additional counts, on April 19, 1988.

On March 15, 1988, John Moller filed a complaint with Bar Association counsel alleging that McGough had neglected the probate of an estate and had failed, after being dismissed, to refund unexpended client trust funds. Bar Association counsel subpoenaed bank records and determined that the Moller funds had been ·deposited directly into McGough's personal checking account. On April 19, 1988 and May 12, 1988, aware of the invasion of a client trust fund, Bar Association counsel twice advised McGough by letter that authorization was being sought to petition the Supreme Court, pursuant to Rules for Lawyer Discipline (RLD) 3.2(a), for an order of immediate suspension. On June 21, 1988 the Review Committee of the Disciplinary Board unanimously authorized a petition for interim suspension. On June 27, 1988 the Review Committee ordered the Moller complaint to a formal hearing.

On June 20, 1988, McGough telephoned and wrote to Bar Association counsel advising that he had "taken client funds" in six other matters. By agreement, McGough's deposition was taken on July 13, 1988, and on August 18, 1988, Bar Association counsel filed a second amended formal complaint which added 16 counts to the existing 5 counts. As more allegations came to light following the Bar Association Auditor's report, the second amended formal complaint was further amended on November 16, 1988 adding three additional counts, for a total of 24 counts.

On September 20, 1988, this court heard argument on Bar Association counsel's petition for McGough's immediate suspension pending the final disposition of the disciplinary proceedings against him. On September 23, 1988, this court entered an order allowing McGough to continue practicing law provided that he meet various conditions including obtaining cocounsel on all matters, obtaining a

supervisory attorney who assumed joint control of his trust account, and his continued cooperation with the Lawyers' Assistance Program. The order further directed that the disciplinary proceedings be expedited for a hearing on the merits.

On December 14, 1988, a disciplinary hearing was held before Hearing Officer John Huneke. Because the parties had stipulated to McGough's misconduct as charged and the various violations of the Rules of Professional Conduct (RPC) as charged,[2] the hearing was to resolve the narrow issue of the appropriate sanction to be imposed for McGough's misconduct. Accordingly, the testimony at the hearing was limited to establishing the injury caused by McGough's misconduct and the extent of any mitigating circumstances.

By agreement, McGough has stipulated to multiple violations of the RPC involving 22 counts of misconduct. The misconduct is fairly wide ranging. McGough has stipulated to converting client trust funds from 10 separate clients in the amount of $18,657.50 over a 19–month period beginning in December 1986. In a number of these instances, McGough stipulated that he failed to complete the matters for those clients in an effort to conceal the conversions, and as a result those clients were put at risk.

In addition, McGough stipulated that he failed to file two criminal appeals and that he subsequently made misrepresentations to those clients. These misrepresentations resulted in his clients losing their right to appeal because the time had expired. McGough's stipulated misconduct also includes failure to promptly respond to two disciplinary investigations; conduct involving dishonesty, fraud, deceit, and misrepresentation; failure to account for client funds; failure to record real estate contracts and obtain title

---

[2]The factual stipulation and stipulated statement of violations (stipulation) contains 23 counts of misconduct. McGough stipulated to 22 of the counts on December 14, 1988.

insurance; failure to calculate a settlement proposal correctly and to seek attorney fees on behalf of a client; failure to probate an estate; and failure to properly file a bankruptcy.

At the hearing, McGough called Dr. G. Andrew H. Benjamin as a witness. Dr. Benjamin is both a lawyer and a clinical psychologist and is the director of the Lawyers' Assistance Program. Dr. Benjamin began working with McGough, as a counselor, in April 1987.[3] The counseling consisted of 19 telephone conversations between Dr. Benjamin and McGough from April 1987 to November 1987 for a total of 9 hours.

Dr. Benjamin diagnosed McGough as suffering from clinical depression, which is the result of his underlying compulsive personality disorder complicated by a series of major interpersonal losses. In addition, Dr. Benjamin determined that McGough had a chronic procrastination problem. Although Dr. Benjamin testified that "the best treatment for clinical depression is a regimen of antidepressant medications" and that he advised McGough to consider using such treatment, McGough rejected this approach. Dr. Benjamin further testified that he recommended to McGough that he obtain either psychiatric or psychological counseling. McGough, however, did not seek such therapy, nor does he have any plans to seek such therapy. Dr. Benjamin also testified that McGough's depression lifted or began to lift in November or December of 1987, whereupon he and McGough discontinued the psychotherapy and he had McGough start speaking with a peer counselor.[4] Nonetheless, the record reveals that after the period of time in which Dr. Benjamin believed that McGough's depression had lifted, McGough continued to convert client trust funds.

---

[3] Dr. Benjamin, however, did not meet McGough in person until June 1988.

[4] McGough is now pursuing peer counseling and pastoral counseling in connection with his church.

On January 17, 1989, the hearing officer filed his findings of fact, conclusions of law, and recommendation. The hearing officer adopted the stipulation as his findings and conclusions and made additional findings as to mitigating and aggravating circumstances. McGough's two previous letters of censure were considered to be an aggravating factor. However, the hearing officer also found several mitigating factors. Specifically, he found that McGough:

1. Participated in the Lawyer's Assistance Program of the Washington State Bar Association from April 1987.

2. From 1985 has experienced major depression.

3. Was divorced in 1984, became responsible for his children, and was embroiled in custody litigation until June 1988.

4. Has consistently sought to make restitution for funds.

5. Since June 1988 has cooperated with Bar investigation.

Although the hearing officer noted that McGough's admitted violations "ordinarily are tantamount to disbarment", he recommended a 9–month "suspended" suspension with various probationary measures including that a supervising attorney act as cocounsel on all matters.

On January 27, 1989, pursuant to RLD 4.13(c), Bar Association counsel filed a motion to modify, amend, and correct the decision of the hearing officer. On February 10, 1989, Hearing Officer Huneke denied the motion. Subsequently, pursuant to RLD 6.1(b), Bar Association counsel filed a notice of appeal to the Disciplinary Board (Board) of the Washington State Bar Association.

On May 12, 1989, the Board heard oral argument on the matter. At the hearing, Bar Association counsel sought a recommendation of disbarment. By a 9–to–3 decision, the Board recommended a 2–year suspension followed by a 2–year probationary period with reinstatement conditioned on a showing that McGough's practice does not present a threat of injury or potential injury to his clients.

The majority of the Board adopted the stipulation as its findings and conclusions. In addition, the majority adopted the following two additional findings:

1. That the actions of Mr. McGough resulted in injury to his clients or had the potential for injury to his clients.

2. That Mr. McGough's actions or failures to act as set forth in the Findings, although under stressful conditions and during a period of depression, were done knowingly.

The three dissenting members of the Board recommended disbarment. The dissent reasoned that because McGough has

> stolen a substantial sum of money, neglected matters, deceived clients for his own benefit, has been previously disciplined, and refuses the type of counseling recommended, . . . that disbarment is the only appropriate discipline.

Pursuant to RLD 7.2, McGough appeals the recommendation of the Board. He contends that, under the circumstances of this case, the purposes of lawyer discipline would be served by a probationary sanction and that any other sanction is primarily punitive.

I

This court has the ultimate responsibility to determine the appropriate sanction for lawyer misconduct. RLD 2.1. *See also In re Felice,* 112 Wn.2d 520, 526, 772 P.2d 505 (1989). Our paramount concerns in fulfilling our responsibility for lawyer discipline are to protect the public, to deter lawyer misconduct, to preserve confidence in the legal profession, and to maintain the integrity of the judicial system. *See Felice,* at 526; *In re Stock,* 104 Wn.2d 273, 281, 704 P.2d 611 (1985); *In re Noble,* 100 Wn.2d 88, 95, 667 P.2d 608 (1983); *In re Greenlee,* 98 Wn.2d 786, 787, 658 P.2d 1 (1983); *In re Zderic,* 92 Wn.2d 777, 789, 600 P.2d 1297 (1979); *In re Kumbera,* 91 Wn.2d 401, 403, 588 P.2d 1167 (1979); *In re Cary,* 90 Wn.2d 762, 766, 585 P.2d 1161 (1978); *In re Smith,* 83 Wn.2d 659, 663, 521 P.2d 212 (1974); *In re Steinberg,* 44 Wn.2d 707, 714–15, 269 P.2d 970 (1954); *In re Little,* 40 Wn.2d 421, 430, 244 P.2d 255 (1952).

■ Although we afford great weight to the Board's recommended sanction, where the recommendation is insufficient "to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession", American Bar Association, *Standards for Imposing Lawyer Sanctions* 7 (Approved Draft, 1986), we will modify it. *In re Johnson,* 114 Wn.2d 737, 790 P.2d 1227 (1990); *In re Lynch,* 114 Wn.2d 598, 789 P.2d 752 (1990); *In re Felice, supra; In re Yates,* 110 Wn.2d 444, 755 P.2d 770 (1988); *In re Selden,* 107 Wn.2d 246, 728 P.2d 1036 (1986).

■ To determine the appropriate sanction for lawyer misconduct, we employ the analytical framework suggested by the American Bar Association.[5] *See Johnson,* at 745; *Lynch,* at 610; *Felice,* at 526; *In re Burtch,* 112 Wn.2d 19, 26, 770 P.2d 174 (1989); *In re Simmons,* 110 Wn.2d 925, 931, 757 P.2d 519 (1988); *Yates,* at 451; *In re Allotta,* 109 Wn.2d 787, 795, 748 P.2d 628 (1988); *In re Witteman,* 108 Wn.2d 281, 288, 737 P.2d 1268 (1987); *In re Rentel,* 107 Wn.2d 276, 282–83, 729 P.2d 615 (1986). Utilizing this comprehensive approach, we consider four questions.

(1) What ethical duty did the lawyer violate? (A duty to a client, the public, the legal system, or the profession?)
(2) What was the lawyer's mental state? (Did the lawyer act intentionally, knowingly, or negligently?)
(3) What was the extent of the actual or potential injury caused by the lawyer's misconduct? (Was there a serious or potentially serious injury?) and
(4) Are there any aggravating or mitigating circumstances?

*Standards,* at 5.

This approach is essentially a 2–stage process. The initial stage involves identifying the misconduct and determining an initial sanction. Here we consider the first three questions. In the second stage of the process we examine any

---

[5]The *Standards for Imposing Lawyer Sanctions* were adopted as official American Bar Association policy in February 1986. They are the result of an exhaustive study done by the ABA Joint Committee on Professional Standards.

aggravating or mitigating factors which warrant modification of the initial sanction.

ETHICAL DUTY

McGough has stipulated to no less than 22 counts of misconduct. His misconduct violated numerous ethical duties to his clients, the community, and the legal system. McGough's misconduct includes the following ethical violations:

1. Three violations of RPC 1.1 (failure to provide competent representation);

2. Two violations of RPC 1.2(a) (failure to abide by a client's decision);

3. Nine violations of RPC 1.3 (lack of diligence);

4. Eight violations of RPC 1.4(a) (failure to keep client reasonably informed about the status of a matter);

5. Twelve violations of RPC 1.14(a) (failure to safeguard the funds and property of a client in an interest–bearing trust account);

6. Nine violations of RPC 1.14(b)(3) (failure to maintain complete records of all client funds and render appropriate accountings);

7. Six violations of RPC 1.14(b)(4) (failure to promptly pay to the client the funds in the possession of the lawyer which the client is entitled to receive);

8. Ten violations of RPC 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation);

9. Nine violations of RLD 1.1(a) (act involving dishonesty);

10. Two violations of RLD 2.8 (failure to cooperate with disciplinary investigation).

Review of the record unquestionably establishes that McGough has stipulated to serious and extensive misconduct. McGough has violated the requisite ethical duties owed to his clients, the public, and the legal system.

A lawyer's ethical duty to his client is the most important ethical obligation. *Standards,* at 5. In this case, McGough's

misconduct approaches the nadir of an attorney's ethical conduct toward his clients. The above enumerated ethical violations unmistakably establish that McGough violated several of the ethical obligations which he owed his clients. McGough failed to exercise the requisite duty of diligence, competence, and honesty to his clients. Furthermore, he failed to safeguard their funds, converted the funds to his own use, and misrepresented his actions to his clients.

In addition to the ethical obligations which a lawyer owes his clients, a lawyer has an ethical obligation to the public. The preamble to the RPC advises lawyers that they have an obligation "to maintain the highest standards of ethical conduct." The public is entitled to be able to trust lawyers to protect their property, liberty, and their lives and to exhibit the highest standards of honesty and integrity. Accordingly, lawyers have a duty not to engage in conduct involving dishonesty, fraud, deceit, or misrepresentations. RLD 1.1(a); RPC 8.4(c). The public's confidence in the legal profession must be preserved, and lawyers who engage in misconduct must be deterred. *Selden,* at 253. In the present case, McGough's misconduct can have no other effect than to erode the public's confidence in the legal system.

McGough, as an attorney, also has an ethical duty to the legal system. Although he has been previously censured for violating his duty to cooperate with a Bar Association investigation, McGough has stipulated to twice again failing to cooperate with such an investigation.

We conclude that McGough's conduct constitutes serious and repeated violations of the requisite ethical duties owed to his clients, the public, and the legal system.

## MENTAL STATE

The Board determined that McGough's actions or failures to act were done knowingly. After reviewing the

record, we concur. Dr. Benjamin testified, before the hearing officer, that McGough's misconduct was knowingly done.[6]

Under the *Standards,* a lawyer who is found to have knowingly engaged in acts of misconduct manifests the second most culpable mental state. Such a lawyer "acts with conscious awareness of the nature or attendant circumstances of his or her conduct". *Standards,* at 6.[7]

### INJURY

The magnitude of the injury is determined by the type of ethical duty violated and the degree of actual or potential harm which is caused. *Standards,* at 6; *Rentel,* at 286.

The Board determined that McGough's actions "resulted in injury to his clients or had the potential for injury to his clients."[8] The record supports the Board's determination. There are numerous and repeated instances of conversion of client trust funds. Moreover, the conversion involved concealment efforts. Those concealment efforts resulted in a risk or potential risk of injury to the clients involved.

Furthermore, McGough failed to file two criminal appeals, failed to file or complete two bankruptcies when garnishments were pending, neglected the probate of an estate, failed to record real estate transactions or obtain title insurance on two real estate closings, and failed to pursue a claim for attorney fees.

---

[6]The hearing officer did not make any finding regarding McGough's mental state. Although Bar Association counsel advised the hearing officer of the *Standards* and attempted to question McGough regarding his mental state, the hearing officer refused to allow those questions.

[7]Although the dissent correctly states that the hearing officer failed to make findings regarding McGough's mental state, the dissent's equation of "mental state" with "mental competency" is erroneous. "Mental state", as employed in this proceeding, refers to whether the attorney's misconduct was done intentionally, knowingly, or negligently. It does not refer to whether the attorney charged with misconduct is mentally incompetent.

[8]The hearing officer made no finding regarding the effect of McGough's misconduct.

In sum, McGough violated ethical duties which he owed to his clients, the public, and the legal system. The record indicates that he did so knowingly and that his misconduct caused potential as well as actual injury. With these conclusions in mind, we must determine the appropriate sanction.

Both prior case law and the *Standards* indicate that disbarment is warranted. Disbarment has been deemed appropriate for those lawyers who convert client trust funds, fail to maintain complete records of trust funds, and fail to account and deliver such funds as requested.[9] *Rentel,* at 286. *See also In re Vetter,* 104 Wn.2d 779, 711 P.2d 284 (1985); *In re Stock,* 104 Wn.2d 273, 280, 704 P.2d 611 (1985); *In re Denend,* 98 Wn.2d 699, 706, 657 P.2d 1379 (1983); *In re Sawyer,* 98 Wn.2d 584, 586, 656 P.2d 503 (1983); *In re Rosellini,* 97 Wn.2d 373, 377–78, 646 P.2d 122 (1982) and the 46 cases cited therein. There are few more egregious acts of professional misconduct of which a lawyer may be guilty than the misappropriation of client trust funds. Disbarment is also the appropriate sanction when a lawyer fails to exercise the requisite diligence owed to his client,[10] violates his duty to provide competent representation,[11] and where an attorney has previously been disciplined for neglect of client matters but persists in a

---

[9]*Standard* 4.11 states that "[d]isbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client." *Standards,* at 9, 26.

[10]*Standard* 4.41 states:
"Disbarment is generally appropriate when:
"(a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or
"(b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or
"(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client."
*Standards,* at 10, 32.

[11]*Standard* 4.51 states that "[d]isbarment is generally appropriate when a lawyer's course of conduct demonstrates that the lawyer does not understand the

continued pattern of neglect. *Yates,* 110 Wn.2d at 453. Accordingly, our initial assessment in this case is that the appropriate sanction for McGough's misconduct is disbarment.

### AGGRAVATING AND MITIGATING CIRCUMSTANCES

The second stage of our analysis involves consideration of any aggravating or mitigating factors and the extent to which they might support a modification of our initial sanction of disbarment. *Johnson,* at 746. In this case there are both aggravating and mitigating factors.

The hearing officer found McGough's prior disciplinary record to be the only aggravating factor. However, there is no indication in the record that the hearing officer considered all of the appropriate aggravating factors.[12] Indeed, it appears that he was very generous to McGough. Both the hearing officer and the Board adopted the stipulation as their factual findings. A fair reading of this stipulation reveals several additional aggravating factors including (1) a pattern of misconduct, (2) multiple offenses, and (3) failure to comply with the disciplinary process. The record in this case reveals that McGough committed multiple acts of misconduct over a 4-year period. He failed to complete real

most fundamental legal doctrines or procedures, and the lawyer's conduct causes injury or potential injury to a client." *Standards,* at 11, 33.

[12]We consider the following aggravating factors:
  "(a) prior disciplinary offenses;
  "(b) dishonest or selfish motive;
  "(c) a pattern of misconduct;
  "(d) multiple offenses;
  "(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
  "(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
  "(g) refusal to acknowledge wrongful nature of conduct;
  "(h) vulnerability of victim;
  "(i) substantial experience in the practice of law;
  "(j) indifference to making restitution."
*In re Yates,* 110 Wn.2d 444, 452, 755 P.2d 770 (1988) (quoting *Standard* 9.22, at 15, 49).

estate closings, two bankruptcies, and two criminal appeals. In doing so, he repeatedly made misrepresentations to his clients. In addition, McGough's repeated invasion of client trust funds also constitutes a pattern of misconduct involving multiple offenses. *Johnson,* at 746. Furthermore, McGough has again twice failed to promptly respond to a disciplinary investigation. Finally, we note that McGough is not inexperienced in the practice of law. The presence of these aggravating factors indicates that an otherwise appropriate sanction should not be modified.

We also consider the presence of mitigating factors.[13] Although mitigating factors do not excuse misconduct, we consider their presence in determining whether to modify an otherwise appropriate sanction. *Felice,* at 528; *Burtch,* at 28; *Rentel,* at 287.

In the present case, the hearing officer found several mitigating factors. Specifically, he found that McGough:

1. Participated in the Lawyer's Assistance Program from April 1987.

2. Consistently sought to make restitution for funds.

3. Cooperated with Bar investigation since June 1988.

4. Experienced major depression from 1985.

---

[13]We consider the following mitigating factors:
  "(a) absence of a prior disciplinary record;
  "(b) absence of a dishonest or selfish motive;
  "(c) personal or emotional problems;
  "(d) timely good faith effort to make restitution or to rectify consequences of misconduct;
  "(e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings;
  "(f) inexperience in the practice of law;
  "(g) character or reputation;
  "(h) physical or mental disability or impairment;
  "(i) delay in disciplinary proceedings;
  "(j) interim rehabilitation;
  "(k) imposition of other penalties or sanctions;
  "(l) remorse;
  "(m) remoteness of prior offenses."
*Yates,* at 452 (quoting *Standard* 9.32, at 15, 50).

5. Divorced in 1984, became responsible for his children, and was embroiled in custody litigation until June 1988.

■ McGough argues that these mitigating factors warrant imposing a sanction of only 9–months' probation. We do not agree. The aggravating factors present in this case are numerous and substantial; the mitigating factors are not. The record in this case indicates that the mitigating factors identified by the hearing officer were a beneficent portrayal of McGough's conduct. The majority of the mitigating factors are nothing more than what a normally prudent lawyer facing discipline would do. As such, they are not afforded great weight.

■ For instance, although McGough participated in the Lawyers' Assistance Program, the record indicates that he continued to invade client trust funds both during and after the counseling without revealing the misconduct to Dr. Benjamin, despite Dr. Benjamin's testimony that all participants in the program are encouraged to reveal their misconduct.[14] As noted by the dissenting opinion of the Board, of the $18,657.50 of client trust funds which McGough converted, some $11,917.50 was converted during the period of time when McGough was in counseling with Dr. Benjamin, and some $2,240 was converted after Dr. Benjamin concluded that McGough's depression had lifted sufficiently to allow McGough to meet with a peer counselor rather than himself or other professionals. Moreover, the extent of McGough's participation in the Lawyers' Assistance Program was rather limited. The record indicates that McGough's counseling consisted of 19 telephone counseling sessions with Dr. Benjamin for a total of 9 hours. These facts substantially diminish the weight we would normally afford to McGough's participation in the Lawyers' Assistance Program. Mere enrollment in the Lawyers' Assistance

---

[14]Similarly, McGough did not reveal the client trust fund invasions to his peer counselor.

Program does not warrant the modification of an otherwise appropriate sanction of disbarment.

    Similarly, McGough's attempt to make restitution is not a weighty mitigating factor. The record indicates that McGough's friends made some of the restitution. Moreover, McGough is simply paying back clients for wrongs which should not have occurred. *In re Witteman,* 108 Wn.2d 281, 298, 737 P.2d 1268 (1987) (Brachtenbach, J., dissenting). Consequently, the weight of McGough's restitution, while of note, is not substantial.

    As far as McGough's cooperation with the Bar Association investigation, the record indicates that his cooperation came at the end of the investigation, and only *after* he was notified that Bar Association counsel had received the subpoenaed documents revealing the client trust fund invasions. While we strongly encourage cooperation and disclosure, we are mindful that such voluntary cooperation and disclosure may be so late in the process that it is of limited weight. *Burtch,* at 27.

    The remaining two mitigating factors cited by the hearing officer relate to McGough's diagnosed clinical depression. These are entitled to more consideration. The record indicates that McGough committed acts of misconduct while he was suffering from depression. Nonetheless, the record also reveals that McGough's misconduct continued even after Dr. Benjamin testified that McGough's depression lifted or began lifting and McGough discontinued counseling. More importantly, McGough has neither utilized the recommended medication nor sought professional help to cure his depression. For us to consider McGough's depression as a significant mitigating factor, McGough must demonstrate that he did everything necessary to recover.[15] The record in this case indicates that

---

[15]For example, when alcoholism is offered as a mitigating factor, we require the attorney to make a genuine effort to recover. *In re Kumbera,* 91 Wn.2d 401, 405, 588 P.2d 1167 (1979).

McGough has refused to follow Dr. Benjamin's recommended treatment for his depression. Consequently, we do not afford this mitigating factor significant weight.[16]

We conclude that the mitigating factors which McGough identifies are simply insufficient to warrant the modification of an otherwise appropriate sanction of disbarment.

## II

▆▆▆ As a final matter, McGough argues that any sanction other than a probationary sanction is primarily punitive and should not be imposed. This argument misses the mark. Although this court has rejected punishment as a primary purpose of lawyer discipline, *In re Brown,* 97 Wn.2d 273, 275, 644 P.2d 669 (1982), the fact that the sanction imposed in a particular lawyer discipline case is to some extent punitive does not render the sanction inappropriate. *Selden,* at 253.

We recognize that the Rules of Professional Conduct place a heavy burden of ethical responsibility upon the shoulders of lawyers. Nonetheless, it is a load which must be carried. A lawyer must ardently fulfill his ethical obligations or be held answerable for misconduct. In the present case, McGough apparently misunderstands the gravity and the seriousness of his misconduct. When a lawyer engages in the type of misconduct demonstrated in this case, disbarment will follow.

## III

Knowingly converting client trust funds, making deliberate misrepresentations to one's clients, and wholly failing to represent one's clients is serious misconduct. To protect the public, to deter lawyer misconduct, and to preserve public confidence in the legal profession and the discipline process, McGough must be sanctioned. Our initial assessment

---

[16]The dissent asserts that the issue of McGough's mental competency has been raised. In his brief, however, McGough does not raise this issue. At oral argument McGough sought only to have this court reverse the recommendation of the Board and allow him to practice law pursuant to a "suspended" suspension. Simply stated, McGough's mental competency is not an issue in this proceeding.

was that McGough be disbarred. After considering both the aggravating and mitigating factors, we conclude that our initial assessment is the appropriate sanction. Accordingly, we order that Joseph E. McGough be disbarred from the practice of law in the state of Washington. We further order McGough to pay costs to the Washington State Bar Association for the prosecution of this disciplinary proceeding pursuant to RLD 5.7(f).

BRACHTENBACH, DORE, ANDERSEN, SMITH, and GUY, JJ., concur.

DOLLIVER, J. (dissenting)—The opinion of the majority is comprehensive and persuasive. From the record it would appear the offenses which Mr. McGough has committed are sufficient to warrant immediate disbarment. If that was all that was involved in the case, I would vote with the majority. There is an aspect of the case, however, which although touched upon by the majority, remains in my view unresolved. This is the mental competence of Mr. McGough both at the present time and at the time of the offenses. As the majority indicates, no findings were made by the hearing officer regarding Mr. McGough's mental state. Majority, at 12 n.6. The other reference made by the majority to Mr. McGough's mental condition is that since he "refused to follow" the recommended treatment of the Director of the Lawyers' Assistance Program his mental condition as a mitigating factor cannot be afforded "significant weight." Majority, at 17.

I see no reason to rush to judgment. While it certainly appears Mr. McGough should not continue in the practice of law—and thus should be suspended forthwith—I do not believe summary disbarment is necessary or proper.

The issue of Mr. McGough's mental competence hangs over this entire proceeding. A person who is mentally incompetent should not be disbarred but rather placed on "disability inactive status". RLD 11.1(i). The issue of Mr. McGough's mental competency which has been raised by

him needs to be determined. I am appalled that the matter was not considered by the hearing officer or pursued diligently by the Bar Association and that it is treated so cavalierly by the majority. Under these circumstances, I cannot vote for disbarment.

I would remand the entire matter to the Washington State Bar Association for a hearing on the past and present mental competency of Mr. McGough. The court should then await the recommendation of the Board of Governors subsequent to that hearing before taking further action. As I believe Mr. McGough should be suspended from the practice of law during this time, no damage would occur to the public.

Mental illness is a malady which must be confronted like any other disability. While the public must be protected, a member of the bar who may be mentally ill must also be protected and must be treated fairly. I do not believe Mr. McGough has been treated fairly by the Bar Association or by the majority. Rather than grant Mr. McGough the protection to which any other citizen of this state who would claim mental incapacity would be given, the majority would summarily disbar him. As it refers to the issue of Mr. McGough's mental incapacity, the entire proceeding has been a charade. I must object and dissent.

CALLOW, C.J., and UTTER, J., concur with DOLLIVER, J.