122 P.3d 710 (2005)
155 Wash.2d 723
In the Matter of the DISCIPLINARY PROCEEDING AGAINST Clayton E. LONGACRE, an attorney at law.
Nos. 200,116-5, 200,125-4.
Supreme Court of Washington, En Banc.
Argued March 10, 2005.
Decided November 10, 2005.
*711 Clayton Ernest Longacre, Port Orchard, for Petitioner.
Sachia Stonefeld Powell, Washington State Bar Association, Anthony Lawrence Butler, Attorney at Law, Seattle, for Respondent.
FAIRHURST, J.
¶ 1 Clayton E. Longacre appeals the Washington State Bar Association (WSBA) Disciplinary Board's (the Board) findings that he committed three acts of misconduct and its recommendation that he be suspended for 60 days and required to attend 30 hours of continuing legal education (CLE) courses. He contends on appeal that (1) the WSBA did not prove the alleged misconduct by a clear preponderance of the evidence and (2) that the recommended sanction of suspension is too harsh, asking instead for a reprimand. Longacre also appeals the Board's *712 denial of his motion for additional proceedings. The WSBA also appeals, arguing that (1) the Board erred in reversing the hearing officer's finding of a pattern of misconduct, (2) the Board erred in determining that Longacre's misconduct was merely negligent rather than knowing, (3) the Board erred in concluding that restitution was not appropriate in this case, and (4) the Board erred in imposing a 60-day suspension rather than a 6-month suspension as recommended by the hearing officer.
¶ 2 We hold that the WSBA proved all three counts of misconduct but that it did not establish a pattern of misconduct or a knowing state of mind and impose a 60-day suspension and 30 additional hours of CLE courses. We also affirm the Board's denial of additional proceedings.

I. FACTUAL AND PROCEDURAL HISTORY

A. The Charges
¶ 3 Longacre was admitted to the practice of law in the state of Washington in 1992. He worked in criminal defense in both King and Kitsap Counties. In 2002, the WSBA filed a formal complaint charging Longacre with three counts of attorney misconduct. The charges against Longacre arose out of conduct that occurred in 2000 while Longacre was representing William Joseph Jones III (Tripp) in a criminal trial and in general alleged that Longacre failed to communicate several plea offers to his client and inform him of the correct sentencing ranges he faced if he were to be convicted at trial. Count I alleged that Longacre violated Rules of Professional Conduct (RPC) 1.2(a), 1.3, and/or 1.1 by failing to represent Tripp effectively and diligently in the criminal proceeding. Count II alleged that Longacre violated RPC 1.2(a) and/or 1.4 by failing to communicate to Tripp the potential sentencing implications Tripp was facing in his criminal proceeding and by failing to convey written information Longacre had received from the prosecutor, including plea offers. Count III alleged that Longacre violated RPC 8.4(d) by engaging in conduct prejudicial to the administration of justice. Longacre denied the misconduct.

B. The Hearing
¶ 4 As an initial matter, the facts in this matter are heavily disputed. As noted by the hearing officer:
The evidence presented was at times conflicting and contradicting. In evidence was the transcript from a prior proceeding before Judge William Howard concerning a Motion for a New Trial after William Joseph Jones III was convicted on the Third Amended Information. There are inconsistencies between the testimony of both Respondent and Mr. Jones between that proceeding and the testimony offered herein. In resolving the inconsistencies and differences between the testimony of each witness the Hearing Officer has thoroughly considered any motivation of each witness with respect to each proceeding; the passage of time between the two hearings, as well as between the events in question and the testimony given with respect thereto; and finally the credibility of each witness based on the ability to observe, and in the case of Mr. Jones listen, to the testimony and to evaluate the demeanor of each witness.
Answering Br. of the WSBA, App. 1 (Findings of Fact, Conclusions of Law, and Hr'g Examiner's Recommendation) (FOF and COL), at 3. With that caveat, the following recitation of fact is largely taken from the hearing officer's FOF.[1]
¶ 5 On May 1, 2000, Tripp and two other boys were arrested for drive-by shooting. Tripp was arraigned the next day in Kitsap County Superior Court and at that time was represented by Tom Weaver. Tripp received a copy of the original information prior to his arraignment. Weaver discovered a conflict in representing Tripp and recommended Longacre as a replacement. After briefly conversing with Tripp and Tripp's father, Longacre was hired to represent Tripp. The hearing officer found that during this brief *713 meeting, Longacre did not discuss the original information with Tripp.
¶ 6 Longacre met with Tripp in jail around May 3 or 4, 2000. Longacre and Tripp discussed Tripp's version of the events surrounding the arrest, but the hearing examiner found that Longacre did not advise Tripp of the sentencing range for the pending charges nor did he go over the contents of the original information.
¶ 7 Tripp planned to pursue a military career, so he wanted to avoid a felony conviction.
¶ 8 Deputy Prosecuting Attorney Kevin "Andy" Anderson (DPA Anderson) was assigned to the case on May 11, 2000, and amended the information to include drive-by shooting, assault in the second degree, and a firearm enhancement allegation. Based on the amended information, DPA Anderson prepared a plea agreement and faxed the amended information and the plea agreement to Longacre on May 11, 2000. The plea agreement articulated the sentencing range of 74-84 months for both counts, including 36 months added for the firearm allegation. In exchange for a guilty plea to the above two counts, DPA Anderson offered a sentencing recommendation of 62 months and an agreement not to file further charges (including additional counts of assault in the second degree with firearm enhancements and/or assault in the first degree). The hearing officer found that Longacre did not discuss this proffered plea agreement with Tripp.
¶ 9 On May 26, 2000, DPA Anderson sent a letter to Longacre in which he warned Longacre of the current standard range and that he would amend the information to include four counts of assault in the first degree (or alternatively four counts of assault in the second degree), all to include firearm enhancements in addition to one count of drive-by shooting. The collective bottom sentencing range, DPA Anderson stated, would be nearly 51 years. DPA Anderson urged Longacre to thoroughly consider the 62-month offer. The hearing officer found that Longacre did not convey the information from the May 26, 2000 letter to his client.
¶ 10 The hearing officer found that on June 13, 2000, DPA Anderson advised Longacre by letter that he would be making a 57-month plea offer to one of Tripp's codefendants and that he would extend the same offer to Tripp. The hearing officer found that Longacre did not communicate this offer to his client.
¶ 11 During a psychological evaluation at Western State Hospital on June 23, 2000, Tripp told Thomas Danner, Ph.D, that he believed he could be facing up to 46 months.
¶ 12 DPA Anderson advised Longacre by letter on July 3, 2000 that, based on Tripp's apparent choice to go to trial rather than agree to a plea, he was going to arraign Tripp on a second amended information with increased charges (based on the charges articulated in the May 26, 2000 letter). The hearing examiner found, and Longacre did not challenge, that Longacre did not share this correspondence with Tripp.
¶ 13 Tripp was arraigned on the second amended information on July 12, 2000. The information charged four counts each of assault in the first degree and assault in the second degree, all with firearm enhancements, and one count of drive-by shooting. These were the same charges DPA Anderson indicated he would pursue in his May 26, 2000 letter. The hearing examiner found that at this arraignment, Tripp would have received a copy of the information and he would have been free to take this back to his jail cell. The information would include the maximum sentence allowed by law but it would not include the standard range sentence information nor would it contain any plea agreement offers.
¶ 14 On August 28, 2000, Tripp went to trial on the second amended information and was convicted of four counts of assault in the second degree with a firearm finding and drive-by shooting. The presentence report included a standard range of 221-246 months based on the convictions.
¶ 15 The hearing officer found that before sentencing, Longacre approached Weaver (Tripp's prior attorney) and discussed Tripp's case. Based on that conversation, Weaver concluded that Longacre had not fully advised *714 Tripp of the offers made by DPA Anderson prior to trial, nor had Longacre understood the consequences of losing the trial. Weaver indicated that these acts could rise to the level of ineffective assistance of counsel and that Longacre should consider withdrawing to allow Weaver to make such a defense in a motion for a new trial. Longacre moved to withdraw on September 12, 2000, and an order approving withdrawal was issued September 19, 2000.
¶ 16 Weaver then took over as counsel for Tripp and filed a motion for a new trial. Visiting Judge William Howard ordered a new trial, concluding that Longacre's representation of Tripp was ineffective. Judge Howard found that Longacre had provided incorrect sentencing information to Tripp, including the proper range and the effect of firearm enhancements (concurrent versus consecutive).
¶ 17 Tripp pleaded guilty to a third amended information charging three counts of assault in the second degree and drive-by shooting (without firearm enhancements) on December 15, 2000. On January 5, 2001, Tripp was sentenced to 57 months pursuant to a plea agreement.
¶ 18 The Kitsap County prosecutor's office filed a grievance regarding Longacre with the WSBA. The WSBA filed a formal complaint charging Longacre with three counts of misconduct for failure to provide efficient and diligent representation, failure to communicate with the client, and conduct prejudicial to the administration of justice.
¶ 19 The hearing officer concluded that Longacre committed the first two counts of charged misconduct but not the third. The hearing officer determined that Longacre "failed to fully communicate to Tripp the sentencing range he faced and thus the risks of going to trial on the first and second amended charging documents and further did not communicate the plea offers received from DPA Anderson to Tripp." FOF and COL at 9. Additionally, Longacre "failed to calculate properly the sentence ranges for the charges and failed to understand that the firearm enhancements would run consecutively rather than concurrently." Id. With respect to count III, the hearing officer concluded that because Longacre's conduct was not "in an official or advocatory role or conduct physically interfering with the enforcement of the law," it was not conduct "`prejudicial to the administration of justice' under RPC 8.4(d)." Id. at 11 (citing In re Disciplinary Proceeding Against Curran, 115 Wash.2d 747, 801 P.2d 962 (1990)).
¶ 20 Having found that the first two counts of charged misconduct were committed, the hearing officer next considered the presumptive sanctions. The hearing officer found that with respect to count I (failure to diligently represent Tripp), the presumptive sanction was a reprimand and concluded there was no basis to depart from that sanction based on aggravating or mitigating factors. On count II (failure to communicate sentence implications and plea offers), the hearing officer determined that Longacre's actions were "negligent and not intentional," but because Longacre "demonstrated a pattern of behavior in failing to communicate with his client, failing to advise him of the standard sentence range penalties he faced if the matter went to trial, and fail[ing] to communicate the plea offers," the presumptive sanction was a suspension under the standards provided by the American Bar Association. Id. at 12; see ABA, STANDARDS FOR IMPOSING LAWYER SANCTIONS std. 4.42 (1991 & Supp.1992).
¶ 21 Although the hearing officer did not expressly identify any facts as aggravating or mitigating factors, he made FOF 32 that Longacre had no prior disciplinary record (which is a mitigating factor), and FOF 33 that, while Longacre admitted that he did not correctly calculate the sentencing ranges Tripp faced, he generally denied any further wrongdoing (which the Board later considered to be an aggravating factor). The hearing officer only referenced mitigating and aggravating factors generally in deciding not to deviate from the presumptive sanction for count I.
¶ 22 The hearing officer recommended that Longacre be suspended for 6 months, placed on probation under Rules for Enforcement of Lawyer Conduct (ELC) 13.8 for a period of 24 months during which period of time he *715 obtain 30 hours of CLE credits in the area of criminal law and procedure, and ordered to pay $9,000 in restitution to his former client (the amount Longacre allegedly received from Tripp's father to represent Tripp).

C. The Board
¶ 23 Longacre filed a notice of appeal with the Board. He disputed 15 of the FOF and the first 2 of the 3 COL, as well as the hearing officer's presumptive sanctions and recommendation. He also requested additional proceedings to supplement the record.
¶ 24 The Board approved and adopted the hearing officer's FOF and COL with some amendments and denied Longacre's request for additional proceedings. The Board determined that, contrary to the hearing officer's conclusion, the WSBA did not establish a pattern of neglect with respect to Longacre's failure to advise his client of the plea offers and potential sentences. Therefore, the presumptive sanction for count II would be a reprimand rather than suspension under ABA Standards std. 4.43. Also in contrast to the hearing officer, the Board found that the WSBA did establish count III conduct prejudicial to the administration of justiceby a clear preponderance of the evidence because Longacre failed to follow a clear practice norm. The Board adopted one mitigating factor, no prior discipline, and three aggravating factors: substantial experience in the practice of law, failure to acknowledge wrongful conduct, and multiple offenses. The Board concluded that the presumptive sanction for all counts would be a reprimand but the multiple violations aggravated the sanction to a 60-day suspension. The Board declined to put Longacre on probation but did agree with the hearing officer's recommendation that Longacre be required to attend 30 additional credit hours of CLE classes. The Board declined to impose restitution because it found that Tripp did receive value from Longacre's representation.
¶ 25 Longacre appealed the Board's decision to this court. Before this court, Longacre assigns error to FOF 4, 5, 9, 12, 14, 15, 16, 24, 29, 30, and 33 as adopted by the Board;[2] COL 1, 2, and 3, as adopted by the Board; the Board's recommended sanction of suspension based on findings of failure to acknowledge wrongful conduct and multiple offenses; and the Board's refusal to order additional proceedings as requested by Longacre.
¶ 26 The WSBA filed a petition for discretionary review. The WSBA assigned error to the Board's determination that there was no pattern of neglect and that Longacre's state of mind was negligent rather than knowing; therefore, the presumptive sanction for count II was a reprimand rather than suspension, restitution was not appropriate, and the recommended sanction was 60 days rather than 6 months. This court granted the WSBA's petition and consolidated the matter with Longacre's appeal.

II. ISSUES

A. Did the WSBA prove all three counts of misconduct by a clear preponderance of the evidence?

B. If the WSBA proved misconduct, what is the appropriate sanction?

C. Did the Board err in denying Longacre's motion for additional proceedings?

III. ANALYSIS
¶ 27 This court bears the ultimate responsibility for lawyer discipline in Washington. In re Disciplinary Proceeding Against Anschell, 141 Wash.2d 593, 607, 9 P.3d 193 (2000).

A. Whether the WSBA proved all three counts of misconduct by a clear preponderance of the evidence

Factual Findings
¶ 28 Longacre assigns error to many of the facts found by the hearing examiner and adopted by the Board arguing that the WSBA failed to prove them by a clear *716 preponderance of the evidence. A challenged finding of fact will not be overturned if it is supported by a clear preponderance of the evidence and unchallenged findings of fact are accepted as true. In re Disciplinary Proceeding Against Kuvara, 149 Wash.2d 237, 246, 66 P.3d 1057 (2003); In re Disciplinary Proceeding Against Anschell, 149 Wash.2d 484, 503, 69 P.3d 844 (2003). "While the hearing officer's findings are not conclusive, they are entitled to great weight, particularly `when the credibility and veracity of witnesses are at issue.'" In re Disciplinary Proceeding Against Haskell, 136 Wash.2d 300, 310, 962 P.2d 813 (1998) (quoting In re Disciplinary Proceeding Against Allotta, 109 Wash.2d 787, 793-94, 748 P.2d 628 (1988)). In determining whether a factual finding is supported by substantial evidence, the court looks to the entire record. In re Disciplinary Proceeding Against Huddleston, 137 Wash.2d 560, 568-69, 974 P.2d 325 (1999) (citing In re Disciplinary Proceedings Against Denend, 98 Wash.2d 699, 704, 657 P.2d 1379 (1983)). "[W]e ordinarily will not disturb the findings of fact made upon conflicting evidence." In re Disciplinary Proceedings Against Miller, 95 Wash.2d 453, 457, 625 P.2d 701 (1981). "`[S]ubstantial, albeit disputed, testimony' is sufficient to support challenged findings of fact." Huddleston, 137 Wash.2d at 568, 974 P.2d 325 (quoting Denend, 98 Wash.2d at 704, 657 P.2d 1379).
¶ 29 Assignments of Error Two and Three: Longacre first[3] assigns error to FOF 5 and 9. In FOF 5, the hearing officer determined that at their first meeting on May 2, 2000 (the arraignment), Longacre and Tripp did not discuss any aspect of the original information. In FOF 9, the hearing officer determined that the meeting in jail on May 3 or 4, 2000, was the first conversation of any substance between Longacre and Tripp and that Longacre did not go over the original information or the sentencing range for Tripp's pending charges. The hearing officer relied upon substantial testimony to support this FOF. See Transcript of Hearing (TR) at 54-55, 63, 73; Ex. 2, at 7-9 (testimony of Longacre at motion for new trial saying he does not remember discussing the original information with his client), 62-63 (testimony of Tripp at motion for a new trial).
¶ 30 To try and convince the court that these findings were not supported by substantial evidence, Longacre first cites Tripp's testimony at the disciplinary hearing where Tripp claimed he never received the original information. Longacre then compares the testimony to DPA Anderson's testimony that in-custody defendants receive a copy of their information as soon as they arrive in the courtroom. But no one disputes that Tripp had a copy of his information, only whether Longacre discussed the contents of that information with his client. Longacre then cites to his own testimony and the testimony of Tripp's father to try and prove the substance of their first conference together. But whether Longacre discussed sentencing possibilities with Tripp's father is immaterial to what Longacre actually told Tripp. Nothing cited in Longacre's briefing shows that Longacre had a substantive discussion with Tripp on May 2, 2000.
¶ 31 Assignments of Error Five and Six: Longacre next assigns error to FOF 16, 29, and 30,[4] regarding whether Longacre correctly communicated the sentencing ranges Tripp faced under the first and second amended informations. The hearing officer relied on the testimony of Tripp and Longacre in determining that Longacre failed to advise his client on multiple occasions of the sentencing ranges he facedincluding the effect of firearm enhancementsunder the varying informations filed against Tripp. See Ex. 2, at 10-12, 14, 16, 19, 26-27, 47-50 (Longacre testifying at the motion for a new *717 trial that he did not remember discussing in detail sentencing ranges with Tripp), 18 (Longacre testifying he did not remember telling Tripp of standard range from DPA Anderson's May 26, 2000 letter), 66 (testimony of Tripp); TR at 59, 80, 84, 91, 180-82, 189-93.
¶ 32 To refute the hearing officer's findings, Longacre again cites extensively to the record but his reasoning for doing so is unclear. Much of the testimony Longacre refers to involves statements that, while he did not remember specifically advising Tripp of any particular information or sentencing range, it would have been his practice to do so and, therefore, he must have done so. Longacre also opines that the fact that his client indicated during his psychological evaluation that he believed he was facing 46 months means he must have seen the original plea agreement dated May 11, 2000 (Ex. 10). On that plea agreement (following the first amended information), DPA Anderson indicated the standard range for count two (assault in the second degree with a firearm allegation) would be 48-50 months. Ex. 10, at 2. The plea agreement also listed 26-34 months above that line as the standard range for count one (drive-by shooting). Id. Longacre argues the only way his client would have known of the 46-month figure was from remembering incorrectly the 48-month figure on the plea agreement for the second count. This argument is unconvincing and illogical.
¶ 33 Further, even if the topic of a plea offer or sentencing had come up, Longacre could still have fallen short of effectively communicating with his client by failing to explain the plea offer or sentencing information and its ramifications. The rest of Longacre's arguments seem to be pointing out the inconsistencies within Tripp and his father's testimony, as well as between those testimonies and Longacre's own statements. This is insufficient to overcome the fact that the hearing officer relied upon substantial testimony to support its FOF. Huddleston, 137 Wash.2d at 568, 974 P.2d 325 (quoting Denend, 98 Wash.2d at 704, 657 P.2d 1379 ("`[S]ubstantial, albeit disputed, testimony' is sufficient to support challenged findings of fact.")).
¶ 34 Assignment of Error Four: Longacre next assigns error to FOF 12, 14, 15, and 30, arguing that he did in fact convey all plea offers to Tripp and his father as well as DPA Anderson's threats to increase the charges. In finding that Longacre failed to convey plea offers to his client, the hearing officer relied on testimony given both at the disciplinary hearing and at the previous motion for a new trial. See TR at 55, 58-60, 82-83, 85, 189-90; Ex. 2, at 10-12, 16-19, 21-22, 35, 45-46 (Longacre's memory failure regarding communications with Tripp at motion for a new trial), 64-67 (testimony of Tripp).
¶ 35 Longacre first argues that his memory failures at the motion for a new trial hearing should be understandable because, unlike at the disciplinary hearing, he was testifying during a 15-minute break from another trial he was involved in, was not given the opportunity to review Tripp's file before testifying, was not given the benefit of hearing testimony of other witnesses to help "refresh and bolster his memory," and was not given the opportunity to present evidence. Resp't's Br. Objecting In Part to Bd.'s Decision (Resp't's Br.) at 25. Thus, he argues more weight should be given to his testimony at the disciplinary hearing rather than to his testimony at the motion for a new trial hearing. But the fact that his testimony at the motion for a new trial occurred relatively soon after the events he described should have made that testimony potentially more accurate than his testimony two years later. The hearing officer made clear in his FOF that he had considered the inconsistency between the testimonies and in reconciling those inconsistencies he took into account the temporal proximity to the events the testimony described, the motivation of the witnesses, and their credibility.
¶ 36 Longacre continues to cite to testimony excerpts of Tripp, Tripp's father, and Longacre, but the passages he cites do not directly support his arguments. For example, he cites to Tripp's father's testimony in which Tripp's father recalls Longacre mentioning a plea agreement with a range of around 58 months to him and his wife after *718 just coming out of a conference with Tripp. But the fact that Longacre had just left a conference with Tripp and proceeded to tell Tripp's parents of the 57-month figure does not mean the same information would have been communicated to Tripp.
¶ 37 Although there is some conflicting testimony, there is substantial evidence in the record to support the hearing officer's FOF. The hearing officer's findings are entitled to great weight. Haskell, 136 Wash.2d at 310, 962 P.2d 813. We decline to alter the FOF as adopted by the Board.

Conclusions of Law
¶ 38 The court will uphold the hearing officer's COL if they are supported by the FOF. Huddleston, 137 Wash.2d at 568-69, 974 P.2d 325. Substantial facts in the record support the hearing officer's COL as amended by the Board.

1. Count I: Duties of diligent and competent representation
¶ 39 The hearing officer's conclusion that Longacre violated his duty to provide diligent and competent representation is supported by substantial facts in the record. "Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." RPC 1.1. Counsel must also "act with reasonable diligence and promptness in representing a client." RPC 1.3. "In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify." RPC 1.2(a). The record reflects that Longacre did not properly calculate the penalties Tripp facednor did he effectively communicate such information to Trippat several stages of the proceedings. He also failed to empower his client with the ability to accept or reject plea offers by failing to adequately inform him of the offers and the penalties he faced if he were to go to trial. Although not dispositive, a superior court judge has already determined that Longacre's representation of Tripp was ineffective, such that Tripp was entitled to a new trial.
¶ 40 We sustain the hearing officer's conclusion as adopted by the Board that Longacre's representation of Tripp was neither diligent nor competent.

2. Count II: Duty to communicate
¶ 41 Ample testimony in the record supports the conclusion that Longacre failed to communicate with his client in violation of RPC 1.4. The duty to communicate requires a lawyer to keep his or her clients "reasonably informed about the status of a matter," and to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." RPC 1.4. Longacre failed to keep Tripp "reasonably informed" about the status of his case and did not allow Tripp to make informed decisions because Longacre did not effectively communicate all plea offers and sentencing implications to his client.
¶ 42 We sustain the hearing officer's conclusion as adopted by the Board that Longacre violated his duty to communicate with his client.

3. Count III: Duty to refrain from conduct prejudicial to the administration of justice
¶ 43 RPC 8.4(d) provides that "[i]t is professional misconduct for a lawyer to ... [e]ngage in conduct that is prejudicial to the administration of justice." The hearing officer found that the WSBA failed to prove the facts necessary to sustain its charge that Longacre violated RPC 8.4(d) because Longacre's "conduct was not conduct in an official or advocatory role or conduct physically interfering with the enforcement of the law," but the Board modified this COL. FOF and COL at 11. The Board determined that the hearing officer "misapplied" In re Disciplinary Proceeding Against Curran, 115 Wash.2d 747, 801 P.2d 962 (1990), and that "Mr. Longacre violated a practice norm established by the U.S. Supreme Court and adopted in Washington." Answering Br. of the WSBA, App. 2 (Disciplinary Bd. Order), at 2 (citing Santobello v. New York, 404 U.S. 257, 260-61, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971) ("The disposition of criminal charges by agreement between the prosecutor and *719 the accused, sometimes loosely called `plea bargaining,' is an essential component of the administration of justice."); State v. James, 48 Wash.App. 353, 739 P.2d 1161 (1987)).
¶ 44 In Curran, this court noted "conduct deemed prejudicial to the administration of justice has generally been conduct of an attorney in his official or advocatory role or conduct which might physically interfere with enforcing the law." 115 Wash.2d at 764, 801 P.2d 962. The court went on to cite with approval Professor Hazard's opinion that "conduct prejudicial to the administration of justice should be construed to include only clear violations of accepted practice norms." Id. at 765, 801 P.2d 962 (citing Geoffrey C. Hazard, The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct 569 (1985)). It is beyond well-established that defense lawyers must communicate all plea offers to their clients. Santobello, 404 U.S. at 260, 92 S.Ct. 495; State v. Osborne, 102 Wash.2d 87, 99, 684 P.2d 683 (1984). Further, Longacre was acting in an advocatory role when he violated the clear practice norm of communicating all plea negotiations to the client. The result of Longacre's failure to communicate is that Tripp, the prosecutor's office, and the superior court all actively participated in and spent valuable resources on a criminal trial only to have a new trial ordered due to ineffective assistance of counsel after which Tripp agreed to the very same offer that was made prior to the first trial.
¶ 45 We sustain the Board's conclusion that Longacre engaged in conduct that was prejudicial to the administration of justice.

B. Issues relating to the appropriate sanction
¶ 46 "[T]his court retains ultimate responsibility for determining the proper measure of discipline," however the court does give "serious consideration" to the Board's recommendation. In re Disciplinary Proceeding Against McLeod, 104 Wash.2d 859, 865, 711 P.2d 310 (1985).
In determining appropriate attorney disciplinary sanctions, the court engages in a two-step process utilizing the ABA Standards. First, the presumptive sanction is determined by considering: (1) the ethical duty violated, (2) the lawyer's mental state, and (3) the extent of the actual or potential harm caused by the misconduct. Second, the court considers any aggravating or mitigating factors that may alter the presumptive sanction or affect the duration of a suspension.
In re Disciplinary Proceeding Against Cohen, 149 Wash.2d 323, 338, 67 P.3d 1086 (2003).
¶ 47 The Board found that for each count, the presumptive sanction was a reprimand. In finding that the presumptive sanction for lack of diligence was a reprimand rather than suspension, the Board rejected the hearing officer's determination that Longacre's conduct constituted a pattern of neglect and the WSBA's argument that Longacre acted knowingly rather than negligently. See ABA Standards std. 4.42. After concluding that the presumptive sanction for each count was a reprimand, the Board found that "the multiple violations aggravate this sanction to a suspension." Disciplinary Bd. Order, at 2. The Board's final sanction recommendation was a 60-day suspension and attendance at 30 hours of additional CLE classes. The Board declined to adopt the hearing officer's recommendation that $9,000 in restitution be imposed because it found that "the client did receive value from Mr. Longacre's representation at the trial." Id. at 2-3.

1. Whether Longacre's lack of diligence and communication was negligent or knowing
¶ 48 The hearing officer found that Longacre's "failure to communicate to Tripp the full risks of going to trial on the charges and the plea offers received was not intentional, but negligent." FOF and COL at 10. The Board did not disturb this conclusion. The WSBA argues on appeal that the hearing officer and the Board ignored the state of mind between negligent and intentional knowingand that because Longacre acted knowingly, the presumptive sanction for violations of RPC 1.2, 1.3, and 1.4 should be suspension rather than reprimand. See ABA Standards std. 4.42(a) ("Suspension is generally appropriate when ... a lawyer knowingly *720 fails to perform services for a client and causes injury or potential injury to a client....").
¶ 49 The ABA Standards define "[i]ntent" as "the conscious objective or purpose to accomplish a particular result," "[k]nowledge" as "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result," and "[n]egligence" as "the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation." ABA Standards at 7. This is a factual determination and the hearing officer's finding is given great weight. Anschell, 149 Wash.2d at 501, 69 P.3d 844 ("We decline ... to make the initial determination of the applicable mental state and the extent of harm in connection with each of the violations. Both inquiries are factual in nature, and the hearing officer is in the best position to make such determinations based upon the evidence presented.").
¶ 50 In finding that Longacre behaved negligently rather than intentionally, it is unclear whether the hearing officer considered the possibility that Longacre acted knowingly. But the hearing officer did clearly make a factual finding that Longacre's behavior was negligent and the Board affirmed that finding. The WSBA's arguments are suggestive that Longacre acted knowingly but are not sufficient to overcome the deference due to the hearing officer's determination of negligence.
¶ 51 Because the hearing officer was in the best position to make the determination and the record does not strongly suggest Longacre's actions were knowing rather than merely negligent, we leave this finding undisturbed.

2. Whether the WSBA established a pattern of neglect such that the presumptive sanction for count II should have been suspension rather than a reprimand
¶ 52 The WSBA argues that the Board erred in rejecting the hearing officer's determination that the record established a pattern of neglect. Under ABA Standards std. 4.42(b), when "a lawyer engages in a pattern of neglect and causes injury or potential injury to a client," suspension is "generally appropriate." The Board stated that because Longacre conveyed one plea agreement and some sentencing information to his client, his actions were inconsistent and, therefore, a pattern of neglect did not exist.
¶ 53 Although the Board did not specifically alter any of the hearing officer's FOF, it did conclude that some information (including a plea agreement) was conveyed to Tripp.[5] The hearing officer made no such finding and, conversely, made several findings of instances where information should havebut was notconveyed to Tripp. See FOF 12, 14-15, 17, 29. Thus, despite the fact that it did not acknowledge that it was doing so, the Board necessarily modified the hearing officer's FOF to the extent that it found that some information was communicated to Tripp.
¶ 54 While we cannot determine from the record the precise number of instances constituting Longacre's failure to communicate, the fact that such failure occurred is clear. However, the insufficiency of the record with regard to the number of instances leaves us unable to determine as a matter of law that Longacre was engaged in a pattern of neglect. We affirm the Board's conclusion that Longacre was not engaged in a pattern of neglect.

3. Whether the Board's conclusions of aggravating and mitigating factors were correct
¶ 55 Longacre argues that, in addition to Longacre's lack of prior discipline, the Board should have also adopted as mitigating factors "Mr. Longacre's extensive well respected criminal trial history without any similar complaints, his absence of dishonest motive, [and] his timely good faith effort to get Trip[p] appellate counsel." Resp't's Br. at 45. Longacre does not provide any citation *721 to the record that supports these claims.[6] Additionally, it does not appear that Longacre argued these potentially mitigating factors before the hearing officer or the Board.[7]
¶ 56 Longacre also assigned error to the Board's finding of aggravating factors (substantial experience in the practice of law, failure to acknowledge wrongful conduct, and multiple offenses), arguing that he "should not be faulted for believing in his position, and that should not be confused with a lack of remorse." Id. But the Board recommended a suspension rather than reprimand because of the multiple violations, not because of the other aggravating factors it noted. Further, the remaining two aggravating factors are supported in the record.
¶ 57 We adopt the Board's proposed aggravating and mitigating factors.

4. Proper sanction
¶ 58 The WSBA asks the court to impose at least a six-month suspension, while Longacre argues that, at most, he should receive a reprimand. The hearing officer recommended a 6-month suspension, 30 hours of additional CLE credits, restitution, and probation. The Board recommended a 60-day suspension and 30 hours of additional CLE credits. As previously noted, this court retains ultimate control over the proper sanction.
¶ 59 Suspension: Because we have declined to find a pattern of neglect or a knowing state of mind, the presumptive sanction for each count is a reprimand. ABA Standards stds. 4.43, 4.53, 5.23. The Board found that, although the presumptive sanction for each count was a reprimand, the multiple violations aggravated the sanction to a suspension. The ABA Standards recognize in its theoretical framework that "[t]he standards do not account for multiple charges of misconduct. The ultimate sanction ... might well be and generally should be greater than the sanction for the most serious misconduct." ABA Standards at 6.
¶ 60 On several occasions, we have entered 60-day suspensions based on the Board's recommendation. See, e.g., In re Disciplinary Proceeding Against Lopez, 153 Wash.2d 570, 106 P.3d 221 (2005); In re Disciplinary Proceeding Against Carmick, 146 Wash.2d 582, 48 P.3d 311 (2002). When the Board is unanimous in its recommended sanction, this court is reluctant to reject its recommendation. In re Disciplinary Proceeding Against Cohen, 150 Wash.2d 744, 763, 82 P.3d 224 (2004).[8] Here, the Board voted 8-2 to recommend a 60-day suspension. We agree with the recommendation and impose a 60-day suspension.
¶ 61 Restitution: A lawyer subject to discipline "may be ordered to make restitution to persons financially injured by the respondent's conduct." ELC 13.7(a). Restitution has been ordered in cases where a lawyer failed to properly communicate with and diligently represent his or her client. See Cohen, 150 Wash.2d at 764, 82 P.3d 224; Anschell, 141 Wash.2d at 619-20, 9 P.3d 193.
¶ 62 The hearing officer specifically found that "[a]s a result of [Longacre's] failure to properly communicate the standard range *722 sentences to Tripp and his failure to communicate the plea agreements to Tripp, Tripp was deprived of his right to participate meaningfully in the proceedings and faced a possible sentence of 221 months, as opposed to a 57 month sentence." FOF and COL at 10. The Board did not alter this finding, but it rejected the hearing officer's imposition of restitution because it determined that Tripp and his father received value from Longacre's representation.
¶ 63 To say that Tripp received absolutely no value from Longacre's services is extreme. Additionally, evidence relating to what Longacre received for his services and what it cost Tripp and his father to rehire Mr. Weaver after the first trial is noticeably absent from the record. The only evidence the WSBA cites to is the testimony of Tripp's father. Tripp's father guessed the amount paid to Longacre was somewhere around $9,000, but also admitted he did not have the documentation to support that figure. TR at 99. The record does not support the imposition of restitution.
¶ 64 In sum, we impose upon Longacre 30 hours of additional CLE courses and a 60-day suspension. We decline to order restitution.

C. Whether the Board erred in denying Longacre's motion to supplement the record
¶ 65 On March 24, 2004, after briefing before the Board was complete, Longacre filed a "Motion Requesting Additional Proceedings" under ELC 11.11. Longacre was attempting to offer the testimony of Tripp's father's from the motion for a new trial hearing. Longacre could have introduced this testimony within the normal timeframe for introducing evidence at his disciplinary hearing. The Board unanimously denied Longacre's request. Longacre claims the testimony is necessary because credibility of the witnesses is at issue and to prevent "an absolute miscarriage of justice." Resp't's Br. at 47.
¶ 66 As the WSBA points out, Longacre's motion was untimely under ELC 11.11, which allows parties to request an additional hearing within the contents of their briefs filed pursuant to ELC 11.8 (briefs for review involving suspension or disbarment recommendation) or 11.9 (briefs for review not involving suspension or disbarment recommendation). As the hearing officer recommended suspension, 11.8(c) provided the timeline for briefing. Longacre did not request additional proceedings in his briefing pursuant to ELC 11.8. Further, Longacre did not satisfy the basis from which additional proceedings may be allowed under ELC 11.11. ELC 11.11 allows an additional hearing "based on newly discovered evidence." Testimony from four years prior is not newly discovered, especially where Longacre himself participated in the past proceedings. ELC 11.11 provides that "[t]he Board may grant or deny the request in its discretion." The Board did not abuse its discretion in denying Longacre's motion.

IV. CONCLUSION
¶ 67 We impose a 60-day suspension and 30 additional hours of CLE courses as recommended by the Board. We also affirm the Board's denial of Longacre's motion for additional proceedings.
WE CONCUR: ALEXANDER, C.J., C. JOHNSON, BRIDGE and OWENS, JJ.
J.M. JOHNSON, J. (dissenting).
¶ 68 I concur with the majority that attorney Longacre's conduct merits a 60-day suspension. This conclusion is largely predicated on Longacre's own explanation to Judge Howard of his conduct, leading that judge to order a new trial based on a finding of ineffective representation of counsel.
¶ 69 I largely agree with the dissent in its general analysis of aggravating or mitigating circumstances. The court need not rely on such factors today since a 60-day suspension is clearly warranted.
MADSEN, J. (dissenting).
¶ 70 Clayton Longacre was charged with three counts of misconduct with respect to the same client, violating RPC 1.1, 1.2(a), 1.3, 1.4, and 8.4(d). The presumptive sanction for these violations is a reprimand according *723 to the American Bar Association's Standards for Imposing Lawyer Sanctions (1991 & Supp.1992) (ABA Standards). However, the Disciplinary Board of the Washington State Bar Association (the Board) recommended, and the majority approves, a 60-day suspension and a requirement that Longacre attend 30 hours of continuing legal education (CLE) courses in the field of criminal law. In so doing, the majority fails to adequately address Longacre's claims that the Washington State Bar Association's (WSBA) Disciplinary Board did not consider or apply several potential mitigating factors that are supported by the record and incorrectly relies on the multiple offenses aggravator to increase the sanction from the presumption to a 60-day suspension.
¶ 71 The majority declines to examine Longacre's mitigation arguments because, it says, Longacre failed to explicitly argue mitigating factors to the hearings officer or the Board.[1] Majority at 28. But the WSBA disciplinary counsel did not argue any specific aggravating or mitigating factors before the hearings officer or Board. Moreover, in other cases, this court has examined the record independently and found additional aggravating or mitigating factors, choosing not to limit itself to what was found by the hearings officer or the Board. Here, the record supports additional mitigating factors. In fairness, and for the sake of consistency, this court can and must consider these factors in determining Longacre's discipline. In my view, the mitigating factors outweigh any aggravating factors and, therefore, the appropriate sanction is a reprimand. Accordingly, I dissent.
¶ 72 In lawyer discipline matters the hearings officer begins by determining whether the WSBA disciplinary counsel has produced facts that prove, by a preponderance, the charged violations. The hearings officer then determines the lawyer's mental state and the degree of harm, or potential harm, caused by the violations and arrives at the presumptive sanction. Mitigating or aggravating circumstances may alter the presumptive sanction. In this case the hearings officer did not identify or weigh any mitigating or aggravating circumstances. Rather, in his findings of fact the hearings officer stated that "[r]espondent has no prior disciplinary record," and "[r]espondent has admitted he did not correctly calculate the sentencing ranges faced by Tripp; but has generally denied any further wrongdoing." Clerk's Papers at 181 (Findings of Fact 32, 33).
¶ 73 Under Washington's disciplinary scheme, these findings of fact are reviewed for substantial evidence by the Board. ELC 11.12(b). The Board also reviews conclusions of law and recommendations de novo. Id. Here, the Board modified the hearings officer's findings of fact and conclusions of law by determining that the WSBA failed to prove that Longacre engaged in a pattern of neglect but that the WSBA did establish that Longacre's actions were conduct prejudicial to the administration of justice. Decision Papers (DP) at 4 (Bd. Order re FFCL). These changes to the hearing officer's findings altered the presumptive sanction from suspension to reprimand. Then, the Board "adopted" three aggravating factors and one mitigating factor that it extracted from the record: "substantial experience in the practice of law, failure to acknowledge wrongful conduct and multiple offenses" and "no prior discipline." DP at 4. The Board recommended suspension, despite the presumption, primarily because of the "multiple violations" aggravating factor. It limited the suspension to 60 days, however, because the presumptive sanction was reprimand. Id.
¶ 74 As noted, the majority accepts the Board's recommendation and imposes a 60-day suspension upon Longacre, with the additional requirement that he attend 30 hours of CLE courses in the field of criminal law, because it says that Longacre failed to argue for the mitigating factors that he raises in this review and because the majority holds that the multiple offenses aggravator found by the Board is appropriate in this case. However, the majority fails to recognize that Longacre is not required to argue the specific *724 factors listed in the ABA Standards std. 9.32 before the hearings officer or the Board in order to raise them on appeal.
¶ 75 This court has "inherent and exclusive jurisdiction over the lawyer discipline and disability system" in cases where the recommended sanction is disbarment or suspension. ELC 12.2(b). The court has "ultimate responsibility [and authority] for determining the nature of an attorney's discipline." In re Disciplinary Proceeding Against Tasker, 141 Wash.2d 557, 565, 9 P.3d 822 (2000). While the "court does not lightly depart from the Board's recommendation... it is not bound by it," id. at 565, 9 P.3d 822, and is thus free to examine the record and determine if additional mitigating or aggravating factors exist as part of its review. In re Disciplinary Proceeding Against Cohen, 150 Wash.2d 744, 758, 82 P.3d 224 (2004); In re Disciplinary Proceeding Against Schafer, 149 Wash.2d 148, 169, 66 P.3d 1036 (2003) (finding additional mitigating factors beyond those found by hearings officer); In re Disciplinary Proceeding Against Schwimmer, 153 Wash.2d 752, 757, ¶ 18, 108 P.3d 761 (2005) (holding that this court has the authority to review the complete record and come to its own conclusions regarding the proper sanctions). The majority's failure to examine the record for mitigating factors independently of the Board's findings is inconsistent with these cases.
¶ 76 Moreover, because of the sensitive nature of disciplinary proceedings, which may strip a lawyer of his professional license or permanently stigmatize and scar his professional reputation, the court should strive to fully examine the record in order to ensure a just and fair outcome. See, e.g., In re Disciplinary Proceeding Against Allotta, 109 Wash.2d 787, 792, 748 P.2d 628 (1988); see also Nguyen v. Dep't of Health, 144 Wash.2d 516, 527, 29 P.3d 689 (2001).
¶ 77 Longacre contends that the Board should have considered his "extensive well respected criminal trial history without any similar complaints, his absence of dishonest motive, [and] his timely good faith effort to get Trip[p] appellate counsel." Resp't's Br. Objecting in Part to Bd.'s Decision (Resp't's Br.) at 45. These three mitigating factors, plus an additional one, are supported by the record and should be included in the determination of Longacre's final sanction.
¶ 78 The first mitigating factor discounted by the majority is ABA Standards std. 9.32(d), a "timely good faith effort to make restitution or to rectify consequences of misconduct." Longacre explicitly argued before the hearings officer that he had done everything possible to secure appellate counsel for his client, Tripp, and to track relevant Supreme Court cases that supported a new trial for his client, even after he had been replaced by Mr. Weaver as Mr. Jones' lawyer and even though Longacre knew that he would not receive additional fees from Jones. Transcript of Hearing (Tr.) at 281, 291-94, 299-300. Longacre even attempted to contact Tripp and inform him that new case law significantly improved his chances at trial,[2] but Mr. Weaver would not allow it. Tr. at 300. This evidence was unrebutted and meets the standard of making a "timely good faith effort ... to rectify consequences of misconduct."
¶ 79 Next, although the Board found that Longacre had "significant experience in the practice of law," it ignored evidence of Longacre's "character or reputation," a mitigating factor under ABA Standards std. 9.32(g). Mr. Jones, Sr., testified to Longacre's reputation when he explained that another attorney recommended Longacre, stating that Longacre "was a good attorney, you probably want to talk to him." Tr. at 98. Additionally, Longacre described his own reputation several times throughout his testimony. Tr. at 233 ("I had the highest win rate for some reason in the public defender's office up there as well as in this whole region."); Tr. at 234 ("So I gained a reputation before I got out of law school of doing exceptional trial work."); Tr. at 262-63 ("Because in the jail, these people think I'm a miracle-maker *725 sometimes when they hear about the different people that I've won acquittals on."). Because the Board found that Longacre had "significant experience in the practice of law," fairness and justice require that we take into consideration his reputation as a competent and well-respected defense attorney as described in the record.
¶ 80 Another mitigating factor described in ABA Standards std. 9.32(b) is "absence of a dishonest or selfish motive." Longacre raises this argument on appeal to this court, but the majority again disposes of it by simply stating that Longacre waived his right to have these mitigating circumstances examined. Although the record does not contain any explicit testimony, i.e., Longacre was never asked why he failed to communicate the prosecutor's offer to his client, it can be easily inferred from his testimony before the hearings officer and in his briefs to the Board that Longacre believed the plea offers were so outrageous and unfair that they could not be viewed as serious offers. This does not excuse him from his duty to inform his client of the plea offers, but it does show that he was motivated by the desire to get the best deal for his client and not from selfish or dishonest considerations.
¶ 81 Next, Longacre's extensive testimony and willingness to be cross-examined must be seen as evidence of his "full and free disclosure to [the] disciplinary board or cooperative attitude toward [the] proceedings." ABA Standards std. 9.32(e). Longacre was not accused of failing to cooperate with the hearings officer or board, and there is no reason to deny him this mitigating factor.
¶ 82 Even accepting the aggravating factors adopted by the Board, the balance of mitigating to aggravating factors points in favor of the presumptive sanction of reprimand, not an increase to suspension. However, the "multiple offenses" and "failure to acknowledge wrongful conduct" aggravating factors are also suspect. The Board's finding of "multiple offenses" as an aggravating factor and the majority's adoption of that finding is dubious in light of similar cases. This particular factor is especially important here, as the Board and majority rely upon it as the reason for increasing the sanction to suspension from the presumptive reprimand. Majority at 721. The ABA Standards list two cases that demonstrate when the "multiple offenses" aggravating factor is appropriate, State ex rel. Oklahoma Bar Association v. Warzyn, 624 P.2d 1068, 1981 OK 23 (1981), and Ballard v. State Bar of California, 35 Cal.3d 274, 673 P.2d 226, 197 Cal.Rptr. 556 (1983). Longacre's behavior does not begin to approach the nature and extent of the misconduct in these cases.
¶ 83 In Warzyn, the disciplined attorney defrauded an innkeeper, engaged in multiple acts of "obtain[ing] cash and merchandise, goods, and services by means of false and bogus checks," 624 P.2d at 1072, and obtained "payment for professional services to be rendered" which he later failed to fully perform. Id. The court noted that the attorney's misconduct was not the result of a single transgression and that he engaged in misconduct over an extended period of time. Id. at 1073.
¶ 84 In Ballard, the attorney was charged with 34 counts of misconduct spanning 34 clients and seven years of practice. The attorney was found to have committed 32 of the 34 charged counts by the hearing panel and review board. The charges were so numerous, the court grouped them into general categories in order to describe them. 35 Cal.3d at 279, 197 Cal.Rptr. 556, 673 P.2d 226. The attorney "failed to perform [properly the duties] for which he was employed," id. (footnote omitted), "violated rule 8-101 in his handling of funds held in trust for six individual clients," id., refused to "refund the unearned portion of advanced fees upon being discharged or withdrawing from employment," id. at 280, 197 Cal.Rptr. 556, 673 P.2d 226, and "violated several miscellaneous disciplinary provisions." Id.
¶ 85 Similarly, recent cases in which this court approved "multiple offenses" as an aggravating factor involved circumstances in which an attorney either engaged in multiple acts violating several ethical rules with one client or violated several rules with respect to multiple clients. See, e.g., In re Disciplinary Proceeding Against Lopez, 153 Wash.2d 570, 580, ¶ 19, 106 P.3d 221 (2005) (finding multiple offenses because the attorney *726 missed four deadlines and violated four separate ethical and disciplinary rules); In re Disciplinary Proceeding Against DeRuiz, 152 Wash.2d 558, 567-72, 99 P.3d 881 (2004) (charging attorney with 11 counts of misconduct with respect to three client matters); In re Disciplinary Proceeding Against Anschell, 149 Wash.2d 484, 490, 69 P.3d 844 (2003) (charging attorney with 11 counts of misconduct with respect to three client matters).
¶ 86 Longacre's conduct does not warrant a "multiple offenses" aggravator. Longacre has not violated ethical rules with respect to multiple clients. Instead, he was charged with three counts of misconduct with respect to the same client, violating RPC 1.1, 1.2(a), 1.3, 1.4, and 8.4(d). While found to have engaged in five separate ethical rules violations, this disciplinary action is primarily based on Longacre's alleged failure to communicate to his client one or more plea offers from the prosecutor and "miscalculations" surrounding these plea offers. The third count alleging conduct prejudicial to the administration of justice stems from the same conduct. Furthermore, it is unclear how many transgressions Longacre actually committed. Majority at 720. The Board rejected a finding that Longacre engaged in a "pattern of neglect" because the evidence did not support it. The Board found that "Mr. Longacre did provide one plea agreement and some sentencing implications to his client, but not others." DP at 4. Since the hearings officer found only two plea offers, the necessary implication is that Longacre only failed to convey, at most, one offer to his client.
¶ 87 Longacre's conduct, as limited and discrete as it was, viewed as a whole, does not rise to the level of egregiousness justifying a finding of "multiple offenses." In virtually any attorney discipline case, multiple counts are commonly charged simply because most discrete behaviors violate more than one RPC. Surely the ABA Standards and this court never intended that all attorneys charged with multiple counts of misconduct be subject to the "multiple offenses" aggravating factor. The test for "multiple offenses" must require something more. More importantly, "multiple offenses" is not listed as a uniquely important aggravating factor in the ABA Standards, and there is no reason why this aggravator alone should overcome the multiple mitigating factors present in this case.
¶ 88 The Board also found as an aggravating factor that Longacre failed to acknowledge his wrongful conduct. The majority simply noted that it was the multiple offenses rather than the other aggravating circumstances that caused the Board to recommend suspension instead of the presumptive reprimand. Majority at 721. If this aggravating factor is irrelevant, the majority has little reason to affirm it. Moreover, Longacre argued that he "should not be faulted for believing in his position, and that should not be confused with a lack of remorse." Resp't's Br. at 45.
¶ 89 Finally, there are facets of this case that the majority does not discuss, which I find significant. For example, Longacre's client, Tripp, did not initiate this complaint or join in as a complainant after it was filed. Rather, the record shows that this grievance was filed by the complaining prosecutor after he was sued by a different client represented by Longacre in a civil matter. Resp't's Br. at 46. While no findings of fact were entered regarding this claim, it should still cause the court to pause and consider the nature of the complaints in this case. Additionally troubling is the fact that this disciplinary action, in part, stems from statements Longacre made during a hearing for a new trial based on ineffective assistance of counsel. If subpoenaed, a defense attorney must testify fully to the actions he or she took while representing the client. Anything less would impact the trial court's ability to make a full assessment of the facts and render a just decision. This court should be concerned that when the prosecutor initiates a bar complaint based on testimony related to a claim of ineffective assistance of counsel, the threat of bar discipline may well have a chilling effect in future cases of this kind. Full and complete testimony is necessary for just decision. This goal is not served if an attorney faces bar discipline, initiated by *727 his or her adversary in the proceeding.[3]
¶ 90 The purpose of attorney discipline is primarily to protect the public and maintain public confidence and trust in the legal system and secondarily to deter other lawyers from similar behavior. In re Disciplinary Proceeding Against Noble, 100 Wash.2d 88, 95, 667 P.2d 608 (1983). According to the findings of fact and conclusions of law that this court has accepted, Longacre violated several ethical duties to his client, Mr. "Tripp" Jones III. However, a suspension, even for only 60 days, is not warranted by the facts of this case and is unfair and excessive given the multiple mitigating factors that have not been considered and the questionable aggravating factors relied upon by the Board.
¶ 91 The Board's recommendation should be rejected and Longacre should be reprimanded, not suspended. I respectfully dissent.
CHAMBERS and SANDERS, JJ., concur.
NOTES
[1] Longacre has challenged several FOF before the Board and on appeal before this court. The merit of those challenges will be discussed within the analysis portion of this opinion where applicable.
[2] Although Longacre also assigns error to FOF 19, he did not appeal that finding before the Board, so we decline to address it here. In re Disciplinary Proceeding Against Kuvara, 149 Wash.2d 237, 246, 66 P.3d 1057 (2003) (hearing officer's FOF not assigned error are verities on appeal if they were adopted by the Board).
[3] Longacre also assigns error to FOF 4, in which the hearing officer found that a codefendant pleaded guilty at his arraignment on May 2, 2000. The correct date, Longacre argues, is May 8, 2000. This fact has no bearing on the disciplinary charges against Longacre, but it does appear from the transcript of the disciplinary hearing that the hearing officer took judicial notice that the codefendant pleaded guilty on May 8, 2000.
[4] In conjunction with this argument, Longacre also assigned error to FOF 19 but, as noted previously, it was not challenged to the Board and therefore is a verity on appeal.
[5] The vote on this issue was 8-2.
[6] The court asked Longacre during oral argument to provide citation to the record in support of his claim that he argued for these mitigating factors below. Longacre responded by citing to TR at 175-78. These pages consist of the testimony of DPA Anderson and Thomas Weaver (Tripp's prior counsel and counsel on the motion for a new trial). They are irrelevant to the mitigating factors that Longacre proposes.
[7] The dissent would allow an attorney to successfully argue for the first time before this court that the Board should have considered several mitigating factors, despite the fact that the attorney provides no support when making such arguments to this court. The dissent would have us conduct an independent search of the record to find support for claims that Longacre himself made no attempt to prove (reputation, absence of dishonest or selfish motive, and timely good faith effort to rectify consequences), and one that Longacre never even asserted (cooperative attitude during proceedings). The attorney appealing recommended discipline has the responsibility to provide factual and legal authority to support the claims being made.
[8] We need not consider whether the recommended sanction is proportionate to Longacre's misconduct or to sanctions imposed against other attorneys because Longacre has not brought "forward cases to try to persuade us that the recommended sanction is disproportionate." See Anschell, 149 Wash.2d at 517, 69 P.3d 844.
[1] Longacre did explicitly argue one mitigating factor to the hearing officer, Transcript of Hearing (Tr.) at 300 (arguing ABA Standards std. 9.32(d)), but the others he now urges were not expressly raised as mitigating factors.
[2] Longacre suggested that State v. Cronin, 142 Wash.2d 568, 14 P.3d 752 (2000) and State v. Roberts, 142 Wash.2d 471, 14 P.3d 713 (2000) created a rule that allowed him to prove that the jury instruction for accomplice liability was incorrect, which Longacre believed gave his client a "much better chance." Tr. at 292.
[3] My concern is not limited to cases involving ineffective assistance of counsel. This court recently reviewed a petition for review involving a trial prosecutor's violation of a pretrial order excluding certain testimony. Presumably the prosecutor may be subject to discipline for violating the trial court order, should defense counsel file a complaint. I am not convinced that our disciplinary system was intended to be used by disgruntled adversaries, as occurred in this case.